Elmer CRULL, (Plaintiff) Respondent,

v.

Thurman GLEB, Defendant,

Allied Western Mutual Insurance Company, Garnishee, Appellant.

No. 31652.

St. Louis Court of Appeals.

Missouri.

Sept. 15, 1964.

Lashly & Neun, Paul W. Lashly, Hiram W. Watkins, St. Louis, for defendant-appellant.

Dearing, Richeson, Weier & Roberts, H. L. C. Weier, Hillsboro, for plaintiff-respondent.

DOUGLAS W. GREENE, Special Judge.

The facts involved in this cause are somewhat novel. Respondent Elmer Crull, hereinafter referred to as plaintiff, and defendant Gleb were neighbors, both living on Cedar Springs Road in Jefferson County, Missouri. A controversy had arisen between them concerning a drainage ditch dividing their land, a by no means uncommon source of litigation in rural areas. On May 24, 1958, plaintiff was dumping debris in the ditch to change its flow, when he was seen by defendant, who was then at his home. Defendant got in his pickup truck and drove down the road toward plaintiff, who got in his automobile and started backing it down the road. Defendant kept coming, and struck plaintiff's car head on, and then struck plaintiff's car three more times, all head on, within a distance of 150 to 200 feet with enough force to bend the frame and break the crankshaft bearing on plaintiff's car. Finally, plaintiff backed, or was knocked into a driveway, whereupon defendant blocked the driveway with his truck, and left on foot, supposedly to call the sheriff. However, plaintiff was able to pull around defendant's truck and leave before defendant returned.

Suit was filed on September 12, 1958 by plaintiff, alleging that the acts mentioned above were done by defendant deliberately and purposely. Defendant was insured by the Western Millers Mutual Insurance Company, whose name was later changed to the Allied Western Mutual Insurance Company, hereafter referred to as garnishee.

The policy provided liability coverage to defendant, and promised to pay on his behalf subject to all of the terms of the policy, all sums which the insured may become legally obligated to pay as damages because of bodily injury, sickness, or disease, including death resulting therefrom, and injury and destruction to property arising out of the ownership or use of defendant's automobile, and to defend suits alleging such damages, and to pay all expenses incurred by company, all costs taxed against insured, and interest on any judgment rendered before company tendered into court the amount of judgment not exceeding the policy's liability limits.

The policy stated that it did not apply to bodily injury or property damage caused intentionally by or at the direction of the insured.

After defendant was served, and garnishee was notified of such service, garnishee advised defendant to obtain independent counsel and defendant did so. It was agreed, under a covenant, that garnishee would assist in defendant's defense, without waiving any right to thereafter raise the

defense of no coverage if the acts of defendant were intentional. Thereafter, on January 5, 1959 plaintiff filed an amended petition in two counts. In Count One, defendant was charged with ordinary negligence in driving and operating his truck so that it collided with defendant's automobile, and, in Count Two, plaintiff alleged that defendant's acts in repeatedly striking plaintiff's automobile four or five times were reckless and wanton and that defendant knew, or should have known, that there was a strong probability that serious harm might result to plaintiff by reason of such acts.

Plaintiff asked for actual damages in Count One, and for actual and punitive damages in Count Two.

Garnishee obtained a supplemental covenant with defendant and defendant's personal counsel to the effect that further action and participation in the case by garnishee's counsel would not waive any policy defenses. Garnishee tendered no defense to defendant on the issue of punitive damages in Count Two of plaintiff's petition, and such defense was undertaken by defendant's personal attorney. Thereafter, on June 25, 1959, the case was tried before a jury, and the jury returned a verdict of $1,500 actual damages and $2,000 punitive damages, making a total judgment of $3,500. A writ of garnishment was filed, and interrogatories to garnishee were filed on January 11, 1960. Answers to said interrogatories were filed on January 14, 1960, and denial of garnishee's answer was filed on January 15, 1960. In said denial, plaintiff stated garnishee was indebted to him in the sum of $3,500, with interest, as the result of the judgment of June 25, 1959, and that the accident which gave rise to the litigation was caused by the careless, wanton and negligent operation of defendant's truck. It stated that no part of the judgment had been paid and prayed judgment against garnishee for $3,500, with interest at 6% from June 25, 1959.

In its reply filed on January 29, 1960, garnishee denied liability to plaintiff, stating the policy did not cover wanton, reckless and intentional conduct of defendant, and that the aforesaid accident was caused by and judgment rendered as the result of the wanton, reckless and intentional conduct of defendant.

The cause was submitted to a jury on January 30, 1963. The parties stipulated to most of the relevant facts involved.

In the stipulation, which was in the unusual form of rather lengthy statements made by counsel for both parties to the jury, it was agreed that the principal issue for the jury was whether or not the actions of the defendant in causing the accident in question were intentional. Nothing was mentioned in the stipulation as to whether or not garnishee was liable for that part of the judgment ($2,000) which represented punitive damages. It was stipulated that the amount of coverage under the policy was in excess of $3,500, plus interest.

Garnishee, at close of plaintiff's evidence, and again at close of all the evidence, filed motions for directed verdict. In both motions, garnishee stated that plaintiff was damaged and injured as result of defendant's intentional acts and, therefore, could not recover, and, in the alternative, that the policy did not cover awards of punitive damages and, therefore, garnishee should receive a directed verdict on the punitive damages issue. Both motions were overruled. At close of all the evidence, plaintiff offered instruction (P–1), which was given by the court, over the objection of garnishee, which instruction reads as follows:

"The Court instructs the jury that plaintiff, Elmer Crull, filed suit against defendant, Thurman Glebb, alleging that he had been damaged by the wanton and reckless acts of negligence of defendant Glebb and that upon trial to a jury, it was the verdict of the jury and the judgment of this Court that plaintiff Crull have and recover of the defendant Glebb actual damages in the

sum of $1,500.00 and punitive damages in the sum of $2,000.00.

"The Court therefore instructs you that if you find and believe from the evidence that at the time of the collision between the vehicles operated by the plaintiff and the defendant, on the 24th day of May, 1958, injury to plaintiff and damages to his property were not caused by the defendant intentionally, but rather by reckless and wanton acts of negligence, and if you further find that no amount has been paid to plaintiff on his judgment, then you will find the issues in favor of plaintiff and against the garnishee in this proceeding."

The jury returned a verdict against garnishee and for plaintiff in the sum of $3,500. From the overruling of garnishee's motion for new trial, garnishee appeals.

Garnishee relies on three points. First, that the evidence shows that the series of collisions mentioned in evidence were intentional, and that therefore no coverage was afforded by the policy. Second, that plaintiff's verdict directing instruction (P-1) was erroneous in that it failed to hypothesize sufficient facts to support a verdict, and in that it unduly emphasized needless facts, and, third, that garnishee is not liable for punitive damages under the terms of its policy.

As to the first assignment of error, garnishee contends that plaintiff's own evidence showed that the series of collisions mentioned in evidence were intentional, and, therefore, no coverage was afforded. At the trial, defendant stated that he was driving an old truck with a straight shift and that he was not familiar with its operation; that the clutch pedal was slick, and had no rubber pad on it; that he had the throttle out to keep the truck running, and that his foot kept slipping off the clutch, and that he became excited and lost his presence of mind, and that this was the reason for the collisions. He stated he did not intentionally strike the front of defendant's car. Plaintiff, in his testimony, stated "the old truck looked like it was getting away from him (defendant) or doing something."

█ Where the verdict is for the plaintiff, the appellate court, in determining whether the trial court erred in refusing a motion for directed verdict, must take plaintiff's evidence as true, where it is not entirely unreasonable, or contrary to physical fact. Sollenberger v. Kansas City Public Service Co., 356 Mo. 454, 202 S.W.2d 25; Lanhan v. St. Louis Public Service Co., Mo.App., 360 S.W.2d 243.

█ The reviewing court does not weigh evidence, it determines only if there was substantial evidence to support a verdict. Harp v. Illinois Central Ry. Co., Mo., 370 S.W.2d 387.

█ The only real issue to be submitted to the jury was whether defendant Gleb's acts, as hereinbefore set out, were intentional. If they were, garnishee was not liable under its policy defense. The word intentional, as used here, means deliberately and consciously intending, or meaning, to do the acts themselves, knowing that they were wrong, and intending that harm result from said acts.

█ There is subtle difference between the terms "intentional" and "wanton and reckless," when those terms are used in connection with the acts of drivers of motor vehicles, and the accidents and injuries that occur as a result thereof. A wanton act, under such circumstances, has been defined as a wrongful act done on purpose, or in malicious disregard of the rights of others, Voss v. American Mutual Liability Insurance Co., Mo.App., 341 S.W. 2d 270, 279, and reckless as an indifference to the rights of others, and an indifference as to whether injury is done or not as the result of such act. Evans v. Illinois Central Ry. Co., 289 Mo. 493, 233 S.W.2d 397, 400. Where used together, wanton and reckless mean that the act was intentional-

ly done, without regard for the consequences. In other words, there was a conscious intent to do the act, knowing it was wrong, but no conscious intent to inflict or cause the harm that followed. Wanton and reckless conduct may, and often does, include negligence. McClanahan v. St. Louis Public Service Co., 363 Mo. 500 en banc, 251 S.W.2d 704, 707. Intentional conduct does not. Therefore, wanton and reckless acts of the insured do not amount, in law, to intentional acts so as to permit an insurer to deny coverage under the provision of a clause, in a liability insurance policy, which provides that it does not provide coverage for injury intentionally caused by insured. Peterson v. Western Casualty and Surety Co., 5 Wis.2d 535, 93 N.W.2d 433, 437, Sheehan v. Goriansky, 321 Mass. 200, 72 N.E. 2d 538, 541, 173 A.L.R. 497.

We hold that plaintiff's evidence, as listed above, would have made a case for the jury on the issues involved, if the issues had been properly defined and limited by the court. We rule this point against garnishee.

Garnishee (appellant) next urges that plaintiff's verdict directing instruction (P–1), as previously set out herein, is reversibly erroneous, in that it fails to hypothesize sufficient facts to support a verdict, and unduly emphasizes needless facts. This argument is well taken. No single fact of the accident itself is hypothesized except the date thereof. The jury is told that if it finds that the plaintiff's injury was not caused by defendant intentionally, but rather by reckless and wanton acts of negligence * * *, then plaintiff should recover. The jury was not instructed as to what terms intentional or reckless and wanton meant, and no facts were hypothesized from which a finding of either could be made.

Further, the instruction singled out, and unduly emphasized, that a prior jury and the trial court had previously found that plaintiff had been damaged in the sum of $1,500 actual damages and $2,000 punitive damages by the reason of wanton and reckless acts of the defendant. This was the finding that the jury was required to make in the present case, and where, as here, such previous finding was not binding on the garnishee, since it was not a party to the previous action, and where the previous jury had no opportunity to determine whether the acts of defendant were intentional acts or wanton and reckless ones, the instruction, by giving undue prominence to the finding of the prior jury and court, was erroneous. Shaffer v. Sunray Mid-Continent Oil Co., Mo., 336 S.W.2d 102, 108, Bittner v. Crown Shoe Mfg. Co., Mo.App., 340 S.W.2d 142, 1. c. 151.

Garnishee's third argument is that the verdict is against the law for the reason that garnishee is not liable for the $2,000 punitive damages, rendered against defendant in the initial action, under the terms of the policy of insurance issued by garnishee to defendant Gleb.

Plaintiff urges that the parties had stipulated that the intent of the defendant was the sole issue to be tried in the garnishment action, and, therefore, the question raised as to the garnishee's liability for punitive damages should not be considered on appeal. While we have no quarrel with plaintiff's position that issues not raised in the trial court shall not be considered on appeal, we do not feel it is applicable here. Whether or not garnishee was liable for punitive damages was a question of law for the trial court, and was an issue that was not subject to stipulation, had such been attempted, which it was not, and, secondly, garnishee raised such issue at every available opportunity, by its pleadings, motions for directed verdict at close of plaintiff's evidence, and at the close of all the evidence, and in his motion for new trial. Plaintiff's point is not well taken, and we will consider the issue on the

merits. This, surprisingly, is a question of first impression in Missouri.

 In order for a plaintiff to recover punitive damages in Missouri, he must prove malice, either actual or legal. In actual malice, the action is motivated by hatred or ill will. Legal malice is the intentional doing of a wrongful act without just cause or excuse in reckless disregard of the rights of others. Zumwalt v. Utilities Insurance Co., 360 Mo., 362, 228 S.W.2d 750, 756, Reel v. Consolidated Investment Co., Mo., 236 S.W. 43, 46. Pashalian v. Big-4 Chevrolet Co., Mo.App., 348 S.W.2d 628, 636.

The chief purpose of punitive damages is punishment to the offender, and a deterrent to similar conduct by others. State ex rel. Boswell v. Curtis, Mo.App., 334 S.W.2d 757, 761, Polk v. Missouri-Kansas-Texas Ry. Co., 351 Mo. 865, 174 S.W.2d 176, 180.

 This being true, it seems only just that the burden of paying punitive damages should rest ultimately, as well as nominally, on the party who actually committed the wrong. If the defendant Gleb was permitted to shift to garnishee the burden of the punitive damage award, then the award would have served no purpose. Plaintiff would have already been made whole through his compensatory damages, and the insurance company, which had done no wrong, would be punished. There is no language in the policy that provides for the payment of judgments for punitive damages. The policy covers only damages for bodily injury and property damage sustained by any person. Punitive damages do not fall in this category. The $2,000 award of punitive damages to plaintiff was to punish defendant for his wrongful acts and as a warning to others. It was not to compensate plaintiff for bodily injury or property damage. The garnishee did not participate in the wrong, and was under no contract to indemnify as such.

Universal Indemnity Insurance Co. v Tenery, 96 Colo. 10, 39 P.2d 776.

 We hold that to allow a motorist to insure himself against judgments imposed against him for punitive damages, which were assessed against him for his wanton, reckless or willful acts, would be contrary to public policy.

Our highway safety problems have greatly increased. Death and destruction stalk our roads. The peaceful Sunday afternoon family drive through the hills has been abandoned by many as the result of brushes with near death at the hands of half-baked morons drunkenly weaving in and out of traffic at 80 or 90 miles per hour.

Criminal charges, convictions, and fines, are not a complete answer. These may be some atonement to society by the offender, but they have little deterring effect on others. In order for the theory of punitive damages (i. e. punishment and deterrent) to work, the delinquent driver must not be able to transfer his responsibility for punitive damages to others.

Public policy against such coverage is based on the thesis that wrong-doing is discouraged by the imposition of personal punishment. If a person is able to insure himself against punishment, he gains a freedom inconsistent with the establishing of sanctions against such misconduct. It is undisputed that insurance against criminal fines would be void as violative of public policy. The same public policy should invalidate any insurance contract against civil punishment that punitive damages represent. Northwestern National Casualty Co. v. McNutty, U.S.C.A. 5th Cir., 307 F.2d 432, and cases cited therein.

The judgment is reversed and cause remanded, for a new trial on the issue of the compensatory damages only.

RUDDY, P. J., and ANDERSON, J., concur.