**Martin KELLAM, Plaintiff-Appellant,**

**v.**

**Clyde COOPER and James L. Curtis, Defendants-Respondents.**

**No. 24425.**

Kansas City Court of Appeals.
Missouri.
June 6, 1966.

J. B. Beavers, Cameron, Robison & Miller, Maysville, for appellant.

Bob F. Griffin, Griffin & Griffin, Cameron, for respondents.

SPERRY, Commissioner.

Plaintiff sued defendants for damages he claims to have suffered when defendants' cattle got into his pasture. He prayed for damages in the amount of $2,550.00. Defendants counterclaimed for damages to their cattle in the sum of $3,595.00. The case was tried to the court. The court found that the evidence offered by each of the parties was so inconclusive that neither carried the burden of proof necessary to recover against the other. Recovery was denied to both parties and each was ordered to pay half of the court costs. Plaintiff appealed.

We agree with plaintiff, that there are more questions of fact involved in this case than there are legal ones.

 Defendants have not appealed. Consequently, we are not concerned with the facts, as they relate to the counterclaim. Since this was a court tried case we will review it upon both the law and the evidence as in suits of an equitable nature. The judgment will not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. Section 510.310(4) RSMo. 1959, V.A.M.S.; City of Kirksville v. Young, 252 S.W.2d 286, 288 (Mo.). The rule of deference is especially applicable where the evidence consists largely of conflicting oral testimony.

Plaintiff and defendants each owned a herd of cattle. Plaintiff pastured his dairy cattle on an eighty acres of land adjoining another eighty acres upon which defendants pastured their stock cattle. These two eighties were each ½ mile in length, from north to south. They were separated by a common fence and it was the responsibility of plaintiff to maintain, in a "cattle proof", or "stock tight" condition, the north half of this fence. It was, likewise, the responsibility of defendants to so maintain the south half of the fence. As to these facts there is now agreement.

Plaintiff pleaded that defendants negligently permitted their "low grade bull" (sometimes referred to in evidence as a "scrub" bull) to break into and remain in his pasture, as a result of which ten of plaintiff's high quality Holstein heifers were bred at an age when they were too young and too small for breeding; that, in addition, fourteen steers also broke into and remained in the pasture, where they ate valuable grass, for a period of one hundred thirty-eight (138) days; that, by reason of the conduct of the bull, plaintiff lost the calf production of the heifers; that the heifers were damaged by having their growth slowed and stunted; that he lost the grass which the cattle consumed; that the total damage he suffered was $2,550.00.

Defendants answered, alleging some defenses that are not material here. They also alleged that the cattle broke through on the north end of the fence, at a place where it was plaintiff's duty to keep it in repair; that plaintiff had, previously, been notified of the defective condition of the fence and had been requested to repair it, but that he failed and neglected to do so; that the break through of the cattle was due to plaintiff's negligence in that respect; and that the damages were largely due to plaintiff's wrongful refusal to permit defendants to remove their bull and steers from the pasture, after they broke into it, when they requested permission to do so.

Plaintiff testified to the effect that, in 1963, he operated a "grade A" dairy; that he kept no bull but practiced artificial insemination; that his practice was to never breed a heifer until she was seven hundred pounds in weight and would calve at from twenty-four to thirty months of age; that he rented the east eighty acres here involved; that Mr. Curtis rented the adjoining eighty; that, in April, 1963, plaintiff moved fourteen head of choice Holstein heifers into his pasture; that nine were not

bred; that they weighed from four to four hundred fifty pounds; that he inspected his heifers and found a small "scrub" Angus bull, and fourteen steers (defendants), running with them; that he notified Curtis and asked that the cattle be removed, but defendants did nothing; that the heifers were in heat when he took them to the pasture; that, on July 10, 1963, he saw the bull service some of the heifers; that he notified defendants thereof by telephone; that they remained in his pasture until September 28, 1963, when they were moved by defendants. He also testified to other facts which, he claimed, caused damages, in the total amount sued for. He stated that the cattle entered his pasture through the south half of the division fence but that he found no broken places therein. He stated that a tree, on defendants' side, had fallen across the north half of the fence; that two posts were knocked down; that the fence was flattened; that he saw cattle tracks on both sides of the fence at this point but none on the flattened fence itself. Plaintiff stated that there is a water gap, protected by a wooden water gate which, he said, was never down or in disrepair during the entire period here involved; that Mr. Curtis, at no time, told him that the gate was down; that he did not know where or how the cattle broke in.

Dr. Bain, a Doctor of Veterinary Medicine, gave testimony to the effect that he inspected plaintiff's heifers after their removal from the pasture and found that ten were bred during the period that defendants' bull was in the pasture. He testified to the effect that Holstein heifers should not be bred when the size of and weight that these were.

Mr. Cooper testified to the effect that, in late April of 1963, he purchased ninety-eight yearling steers, averaging about five hundred twenty pounds, and trucked them directly from the stock yards to the Curtis farm; that he was informed, by the seller, that the calves were all clamped, that is, rendered sexually impotent; that it is diffi-cult to determine if a calf has been clamped without a careful "feel" inspection; that he later learned that one animal had not been clamped.

Mr. Curtis stated that, when the cattle arrived at the farm, he kept them in another area than this eighty acres; that defendants' fence was checked and was in good condition but that the water gate, in the north half, was down; that he informed plaintiff of that fact; that plaintiff claimed that the north half of the fence was defendants to maintain; that defendants kept their cattle out of this pasture so that plaintiff could fix the fence; that he repeatedly requested plaintiff to repair the gate; that, finally, because of the shortage of grass, he turned the cattle in, about June 1st; that, thereafter, he saw a few head in plaintiff's pasture from time to time; that he would open a gate and drive them out; that he repeatedly asked plaintiff to fix his fence; that plaintiff stated that he was not required to fence against bulls, bears, or stallions; that, on July 10th, plaintiff telephoned and said that fifteen head of defendants' cattle were in his pasture, including a bull; that he told defendants to stay off the land, that we were to consider the cattle shut up and that we should get a lawyer; that, as to the bull, he would "clamp the bastard"; that Curtis told plaintiff that he would clamp the bull; that, on the following day, Mr. Cooper, his daughter, and Curtis, inspected the pasture fence and found the water gate flat on the ground; that the wire cable, from which it was suspended, was down; that they took pictures of the situation; and that there were cattle tracks coming and going over the top of the water gate. These pictures were introduced in evidence and they are corroborative of Mr. Curtis' testimony. They show Mr. Curtis standing on the fallen gate, which was on the ground. Mr. Cooper and his daughter also testified to the same effect. The cattle remained in the pasture until September, when Mr. Curtis opened a gate in the fence and put

protein blocks in his pasture. The cattle came through the gate to eat them.

There was testimony to the effect that a bull has a strong propensity to break through a division fence in order to fraternize with heifers in an adjoining enclosure; that, if there is a weak place in the fence, he will seek it out and commit trespass (quare clausum fregit); that steers, not being aware of their lack of sexual potency, will break and enter where there are heifers, from purely prurient motives; that this natural tendency is generally known to those engaged in cattle farming. Indeed, that tendency is commonly known to affect the conduct of all males of every species.

It is now admitted that it was plaintiff's obligation to keep the north end of the fence in a cattle proof condition. He knew that defendants' cattle were going to be released into their pasture. He was repeatedly told that the water gate was down and needed repairs, long before the cattle were released. Defendants' testimony was to the effect that plaintiff failed and neglected to make any repairs until after defendants' cattle were removed from the pasture. Plaintiff testified to the effect that the water gate did not need repairs and he did not claim that he made any, excepting on one occasion, after a heavy rain, at an undisclosed date. On July 10th he ordered defendants to stay off the land. Although they told him that they would clamp the bull, he would not permit defendants to remove the cattle. In his testimony he stated that he did not know how or where the cattle came through the fence.

In view of the fact that determination of the issues presented at this trial rests upon the weight to be given to the oral testimony, and upon the credibility of witnesses whose testimony, in many instances, was conflicting, we should defer to the findings and judgment of the trial court. It was plaintiff's obligation to prove his case by a preponderance of the credible evidence. The court found that he failed to do so.

This court cannot hold the judgment to be clearly erroneous. It is affirmed.

MAUGHMER, C., concurs.

PER CURIAM:

The foregoing opinion of SPERRY, C., is adopted as the opinion of the Court.

HOWARD and BLAIR, JJ., concur.

CROSS, P. J., not participating.