**Evelin Louise PROBST,
Plaintiff-Appellant,**

**v.**

**Emil Alvin PROBST,
Defendant-Respondent.**

**No. 40593.**

Missouri Court of Appeals,
Eastern District,
Division One.

Dec. 18, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 15, 1980.

Application to Transfer Denied
April 8, 1980.

Buerkle, Buerkle & Lowes, Albert C. Lowes, Jackson, for plaintiff-appellant.

William S. Rader, Cape Girardeau, for defendant-respondent.

WEIER, Judge.

Evelin Louise Probst sued her half brother Emil Alvin Probst to partition and sell approximately 127 acres of land owned by both parties as tenants in common. After the real estate had been sold by the sheriff to Evelin and the sale had been approved, an amended petition was filed which sought to quiet title to this real estate to assess money damages for alleged acts of Emil and other relief. The quiet title action centered about the location of a north and south line which adjoined land on the west owned solely by defendant Emil. He asserted the line was east of his barn and that if the intervening narrow sliver of land lying between the barn and a fence was not in his record title, he prayed to quiet title to this strip by reason of adverse possession. The issues framed by the amended petition were tried to the court without a jury and judgment was rendered in favor of Evelin and against Emil on the real estate claimed by her. The court adopted a description that determined the disputed west line jogged west to east 15 feet 895.5 feet north of the southwest corner and 2474.6 feet south of the northwest corner. The original description showed this to be a straight line. The court denied Evelin's prayer for an order to construct and maintain a line fence along this joint line with Emil without prejudice to any subsequent action authorized by Chapter 272, RSMo. 1969, and denied all of her prayers for money damages which were set up in the first count of the petition seeking to quiet title and also in subsequent counts. These claims are discussed at a later time in connection with the assignments of error directed to them.

We turn first to the contention of Evelin on appeal that the trial court erred when it determined that Emil had obtained title to a narrow .64 acre tract next to the west line of her property and that there is no legal or equitable theory to support such finding, including the plea of adverse possession asserted by Emil. Before we get into the problems involving the assertion of adverse possession between tenants in common (see *Higgerson v. Higgerson*, 494 S.W.2d 374 (Mo.App.1973)) or, in order to support the court's judgment for some other valid reason, involve ourselves in a discussion of another theory such as an agreement as to location of boundary (see *Mothershead v. Milfeld*, 236 S.W.2d 343, 347 (Mo.1951)), we consider whether there is any probative evidence to sustain the court's adjudication of title.

In the beginning, it seems doubtful that there was ever any dispute with regard to title. The plaintiff in her amended petition after obtaining the judgment in partition and purchasing the land alleged ownership of the land containing about 127 acres. The defendant admitted the description of the property set forth in this petition. He further admitted that Evelin purchased all of the right, title and interest of the parties in this land at the partition sale and that since that time Evelin was the "entire" owner of said tract. Evelin further alleged in her Count I that the line surveyed established that the fence as previously located between her property and Emil's property was not on the property line and that the true line was 15 to 30 feet west of the fence. Emil in his answer affirmatively alleged that he owned property consisting of some 80 acres adjacent to the real estate purchased by plaintiff at the partition sale. Emil further stated that the line fence had been in its present location from the time that plaintiff had owned his property and before defendant and his deceased mother bought the tract which Evelin later purchased at the partition sale. In plaintiff's brief, Count I is described as a suit to quiet title, "which mainly involved a

fence line between plaintiff's and defendant's land." In defendant's brief on appeal, his position is stated: "At the partition sale, she purchased the property and then sought to have a legal determination made with respect to the boundary line between her newly purchased tract and her step-brother's farm."[1] Irrespective of the nature of the action, however, it is evident that the survey which was used to support the court's determination as to the boundary is based upon a survey which was not definitely shown to have commenced from a corner established by the United States government or, if lost, re-established in accordance with the statutes. Chapter 60 RSMo. 1978. Such a survey lacks probative force. *Carroz v. Kaminiski, supra,* 467 S.W.2d 871, 872 (Mo. banc 1971); *Burke v. Colley,* 495 S.W.2d 699, 702 [1, 2] (Mo.App. 1973).

The description of Evelin's land commenced at the northeast corner of U.S. Survey 190. The surveyor in this case testified that his survey of the boundary was based on a description taken from plaintiff's abstract of title. He started his survey at a point which he established from data contained in the abstract and also a 1939 aerial photograph not introduced into evidence. He never found the corner of U.S. Survey 190. The corner was gone. Although the deed called for a straight line for a boundary between Evelin's and Emil's land, the eventual line established· by the judgment jogged some 15 feet to the east 895.5 feet north of the southwest corner and 2474.6 feet south of the northwest corner. The survey upon which the judgment was based had no probative validity because it was not shown to have started from a valid established corner.

For the reasons given, the judgment of the court adjudicating title to the real estate in plaintiff which in effect established a new boundary line between plaintiff's and defendant's land must be reversed and remanded.

■ The remaining assignments of error deal with damages. The first of these involves the contention that the court failed to award plaintiff damages against the defendant because he had allowed stock to run upon the property of plaintiff. On this and other issues there was much conflicting oral testimony. Defendant admitted that some of his cows, the exact number not known to him, had grazed on rough ground in a wooded area of 15 or 20 acres that belong to Evelin since the partition sale. He did not think that they damaged any part of her property but merely ate grass in this pasture. The cows were over there because he and Evelin had been unable to settle the fence line dispute and he had not erected any fence because the line had not been fixed. When she was asked as to what damage she estimated the animals caused, she indicated that she did not know. There was testimony with respect to a rental of $3 to $4 a head for pasture but the exact number of cattle grazing on the land and how frequently they used it were never established. Obviously the evidence concerning any damage to Evelin's land was not definite enough for the court to actually arrive at any damage figure. Furthermore, where there is conflicting oral testimony, as here, the credibility of the witnesses is a major issue and we normally defer to the findings and judgment of the trial court. Rule 73.01.3(b); *Kellam v. Cooper,* 404 S.W.2d 394, 397 [5] (Mo.App.1966). We concur with the findings of the circuit court.

■ Plaintiff's next assignment of error centers around the failure of the court to award damages for the removal of four metal gates and 50 sheets of tin from plaintiff's property. Again the oral testimony is conflicting and the credibility of the witnesses is a major factor. Defendant admitted taking the four metal gates but testified that he took them before the land was sold at partition and that he removed them

1. It would seem that the parties were attempting to state an action in ejectment rather than quiet title since ejectment and not a suit to quiet title is the appropriate remedy for the determination of a boundary line. *Carroz v. Kaminiski,* 467 S.W.2d 871, 872 (Mo. banc 1971); *Albi v. Reed,* 281 S.W.2d 882, 885 [6] (Mo.1955).

**292**

because he had paid for them himself. As to the tin, defendant testified that he did not tear the shed down where the tin had been used as roofing but had some of the tin removed from the road where it had been blown by the wind. We again see no reason why we should disagree with the finding of the circuit court.

■ The final assignment of error concerns the trial court's failure to award punitive damages for alleged willful, malicious and deliberate acts of the defendant. This is couched in general terms and the point relied on fails to set out the activity complained of. However, we gather from the argument that the claim is based upon acts of the defendant for which plaintiff had previously made claims for actual damages. Punitive damages are not compensatory but are imposed for the purpose of punishment and deterrence to prevent the wrongdoer from engaging in the same type of activity. *State ex rel. Smith v. Greene*, 494 S.W.2d 55 (Mo. banc 1973). Punitive damages, however, cannot be awarded unless actual or nominal damages are recovered. *Coonis v. Rogers*, 429 S.W.2d 709, 716 [16] (Mo.1968). We are affirming the trial court's judgment denying actual or nominal damages. It therefore follows that punitive damages cannot be awarded.

The judgment of the court adjudicating title is reversed and remanded. The judgment in all other respects is affirmed.

SNYDER, P. J., and PUDLOWSKI, J., concur.