**SCHNUCK MARKETS, INC.,**
**Plaintiff-Appellant,**

v.

**TRANSAMERICA INSURANCE COMPANY and Mission Insurance Company, Defendants-Respondents.**

No. 44151.

Missouri Court of Appeals,
Eastern District,
Division Four.

April 19, 1983.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
May 26, 1983.

J. Roger Edgar, Jacquelyn J. Givens, St. Louis, for plaintiff-appellant.

Carter, Brinker, Doyen & Kovacs by Gary P. Paul, Clayton, for Transamerica Ins. Co.

Moser, Marsalek, Carpenter, Cleary, Jaeckel & Keaney by Joseph H. Mueller and Jerome C. Simon, St. Louis, for Mission Ins. Co.

SATZ, Judge.

Plaintiff, Schnuck Markets, Inc., (Schnucks) brought this action for declaratory relief against Transamerica Insurance Company (Transamerica) and Mission Insurance Company (Mission), seeking a declaration of Schnucks' rights under three policies of liability insurance. Each policy covered a different period of time. These policies were issued by Transamerica, as the primary insurer, to Schnucks. Mission issued an "umbrella" policy, providing excess coverage to Schnucks. The parties agree the coverage in Mission's policy is dependent upon the coverage of the underlying Transamerica policies.

Schnucks' petition for declaratory judgment describes 12 actions which were pending against Schnucks at the time of the filing of its petition. In its petition, Schnucks alleges that Transamerica's policies provide coverage for all liability imposed on Schnucks as a result of these actions and obligates Transamerica to defend Schnucks against all claims arising in these actions.[1] The actions are basically three types: service letter actions under § 290.-140 RSMo 1978; wrongful or false arrest actions; and actions in negligence for personal injuries, i.e., two automobile accident cases and one "slip and fall" case. Each of

these causes of action contains a prayer for punitive damages or allegations of gross negligence and willful and wanton misconduct. Transamerica informed Schnucks by letters that punitive damages may not be covered by the insurance policies and advised Schnucks that it could obtain its own attorneys regarding the punitive damage claims. Defendant Mission also advised Schnucks that there was no coverage for punitive damages under its policy of insurance.

Schnucks requested the trial court to declare that the insurance policies in question include coverage for punitive damages and that Transamerica and Mission breached their respective contracts in each instance. Transamerica and Mission denied their respective policies provided coverage for prayed for punitive damages or punitive damages awarded because of alleged willful or wanton misconduct. The trial court found the terms of the policies do not include coverage for punitive damages and further concluded the public policy of Missouri prohibits such coverage. Summary judgment was entered in favor of Transamerica and Mission. Schnucks appeals.

On appeal, Schnucks makes three basic arguments. First, Schnucks contends the terms of the policies provide coverage for punitive damage. Second, Schnucks argues the public policy prohibition against an individual shifting his liability for punitive damages by insurance coverage should not apply to Schnucks, because Schnucks' liability for punitive damage, in the underlying lawsuits, would be imposed against Schnucks only vicariously and without Schnucks' actions or omissions being "directly or indirectly an element in the commission of the harm." Third, by advising Schnucks it would not defend against a claim for punitive damages, Transamerica breached its contract. We disagree with

---

1. The policies provide blanket liability coverage for damages because of bodily injury or property damage caused by an accident. Under coverage P, the policies provide personal liability insurance for damages because of personal injury arising out of specified intentional torts, including false arrest, detention or imprisonment, malicious prosecution and libel. By amendment to coverage P, the policy also covers service letter actions.

Schnucks' first argument, and, thus, do not reach its second and third arguments.

Schnucks' first argument—that the policies provided coverage for punitive damages—is based upon its interpretation of the following language of the policies:

> "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence." [2]

Schnucks narrows the scope of its inquiry by focusing on that part of the policy provision providing protection for "all sums which the insured shall become legally obligated to pay" and suggests that the question of whether this provision, as quoted by Schnucks, is sufficiently broad to include liability for punitive damages is a question of first impression in Missouri. By narrowing its inquiry to the latter quoted phrase, Schnucks eliminates qualifying language which we consider critical. The policy does not simply provide coverage for "all sums which the insured may become legally obligated to pay" but, rather, provides coverage for "all sums which the insured may become legally obligated to pay *as damages because of bodily injury ...*" [or] ... "*personal injury.*" [3] (Emphasis added) Construction of this latter phrase is not a question of first impression in Missouri. Language almost identical to this phrase was construed by this Court in *Crull v. Gleb,* 382 S.W.2d 17 (Mo.App.1964).

**2.** Under Section VIII, Definitions, "bodily injury" means:

> "[B]odily injury, sickness or disease sustained by any person which occurs during the policy period, including death of any kind resulting therefrom."

"Occurrence" means:

> "[A]n accident, including continuous or repeated exposure to conditions which results in *bodily injury or property damage neither* expected nor intended from the standpoint of the insured."

Under coverage P, Personal Injury Liability Insurance Coverage Supplement, Transamerica was obligated to pay on behalf of the insured "all sums which the insured shall be legally obligated to pay as damages because of injury (herein called "*personal injury*").

In the *Crull* case, this Court was confronted with the issue of whether an automobile liability insurance policy covered punitive damages. Although not quoted verbatim, the Court stated that the policy provided coverage for

> "all sums which the insured may become legally obligated to pay as damages because of bodily injury, sickness or disease, including death resulting therefrom, and injury and destruction to property arising out of the ownership or use of defendant's automobile, ...." *Id.* at 19.

To resolve the coverage issue the Court apparently made two separate inquiries: (1) whether the terms of the policy provided coverage for punitive damages and (2) whether the policy was void as a matter of public policy. Answering the first inquiry, the Court construed the policy as providing no coverage for punitive damages. The Court stated, without discussion: "There is no language in the policy that provides for the payment of judgments for punitive damages. The policy covers only damages for bodily injury and property damage sustained by any person. Punitive damages do not fall in this category." *Id.* at 23.

Having concluded the policy in question provided no coverage for punitive damages, it was unnecessary for the Court to determine whether a policy which does cover punitive damage is void as a matter of public policy. However, the court did make this determination, concluding that such a

Coverage P provides for damages sustained by any person or organization arising out of certain activities in the conduct of the named insured's business, specifically including false arrest and libel. Under Section IV of Coverage P "damages" is defined as:

> "[O]nly those damages which are payable because of personal injury arising out of an offense to which this insurance applies."

By an amendment to that supplement, *injury* arising out of failure to issue or the issuing of a service letter, as required by statutes, which is alleged to be improper or to contain any false or defamatory statement or material is covered.

**3.** *See* fn. 2, *supra.*

policy was void.[4] Arguably, the Court's interpretation of the policy language may have been affected by public policy considerations and, arguably, the invalidation of the policy on public policy grounds may have made the interpretation of the policy language mere dicta.[5] Nonetheless, the Court did construe the meaning of the terms in question and this interpretation of the policy language in *Crull* was accepted by our colleagues in the Western District in *Colson v. Lloyd's of London*, 435 S.W.2d 42, 46–47 (Mo.App.1968).[6]

Our threshold question here is whether our construction of the policy language in issue should be inconsistent with the construction placed on almost identical language in *Crull* and accepted in *Colson*. The virtue of consistency in the law is axiomatic. On the other hand, "foolish consistency is the hobgoblin of little minds." The meaning of the words used in the *Crull* case has not changed within the last 20 years. Thus, unless the *Crull* interpretation is foolish or irrational, there is no sense in now construing the same language inconsistently and ignoring *Crull*'s interpretation of that language as being arrived at because of public policy considerations or dismissing it as mere dicta. Although not explicitly articulated in *Crull*, we find there is a ra-

tional basis underpinning the Court's construction of the language in *Crull*.

Punitive damages are not in the same category as damages "for bodily injury" or "for personal injury." "The chief purpose of punitive damages is punishment to the offender, and a deterrent to similar conduct by others." *Crull v. Gleb, supra* at 23.[7] Punitive damages are never awarded as compensation. *Probst v. Probst*, 595 S.W.2d 289, 292 (Mo.App.1979). They "are mere incidents to the cause of action and are considered separate and apart from and in addition to the assessment of actual damages." *Holcroft v. Missouri-Kansas-Texas R. Co.*, 607 S.W.2d 158, 163 (Mo.App.1980). While actual damages are measured by the extent of the injury, punitive damages are measured by the extent of the malice of the actor. *Schmidt v. Central Hardware Company*, 516 S.W.2d 556, 560 (Mo.App.1974); *Holcroft v. Missouri-Kansas-Texas R. Co., supra* at 163; *Compare* MAI 4.01 (actual damages) with MAI 10.01–10.03 (punitive damages). Since punitive damages are never awarded merely because of a "bodily injury" or "personal injury" but only when the actor's conduct displays the requisite malice, we find they are not in the category of damages for "bodily injury" or "personal

---

4. The Court's premise was that insurance coverage for punitive damages nullifies the dual purpose of punitive damages—punishment and deterrence. The Court stated: "If a person is able to insure himself against punishment, he gains a freedom inconsistent with the establishing of sanctions against such misconduct. It is undisputed that insurance against criminal fines would be void as violative of public policy. The same public policy should invalidate any insurance contract against civil punishment that punitive damages represent . . . ." *Id.* 382 S.W.2d at 23.

5. Conversely, the Court's conclusion that no coverage for punitive damages was provided makes the public policy conclusion mere dicta.

6. In *Colson*, the court construed a policy entitled: "False Arrest Insurance." The insured was an association of law enforcement officers. The Court held this policy covered liability for punitive damages. *Colson v. Lloyd's of London, supra* at 46–47. The policy in *Colson* provided coverage

   ". . . against loss by reason of liability imposed by law upon the assured, by reason of

any false arrest, assault and battery (as herein defined), false imprisonment or malicious prosecution which may be committed during the currency period of this certificate: . . . ." *Id.* at 43–44.

The *Colson* court distinguished the language in its policy from the language in *Crull* by noting that the *Crull* language excluded coverage for punitive damages because it requires that liability "arise out of bodily injury" while the *Colson* language "covers any 'loss . . . imposed by law' ", including loss caused by an award of punitive damages. *Id.* at 46–47.

7. In its brief, Transamerica correctly points out that in some states, including Connecticut, Michigan, New Hampshire and Iowa, punitive damages are awarded as compensation to the plaintiff rather than as punishment to the defendant, and, in other states, punitive damages are awarded both as punishment to the defendant and as compensation to the plaintiff. *See,* Note, *Insurance For Punitive Damages: A Reevaluation*, 28 Hastings L.J. 431, 434 (1976).

injury". *See, e.g., Cavin's Inc. v. Atlantic Mut. Ins. Co.,* 27 N.C.App. 698, 220 S.E.2d 403, 406 (N.C.Ct.App.1975).[8]

Schnucks argues that in *Crull* this Court's contractual construction regarding the punitive damage question turned on the Court's evaluation of public policy considerations which have no application to the present case. Schnucks contends the "majority of decisions which have construed [the language in issue] have found the . . . language is sufficiently broad to include punitive damages." Although not numerous, these cases basically fall in two broad classifications: (1) Those cases in which the courts find the language to be plain and unambiguous and conclude the words "all damages" means *"all"* damages, *Norfolk & Western Railway Co. v. Hartford Accident and Indemnity,* 420 F.Supp. 92 (N.D.Ind. 1976);[9] *Southern Farm Bureau Casualty Ins. Co. v. Daniel,* 246 Ark. 849, 440 S.W.2d 582, 584 (Ark.1969);[10] *Carroway v. Johnson,* 245 S.C. 200, 139 S.E.2d 908, 910 (S.C. 1965). (2) Those courts which reach the same conclusion by starting with an opposite premise. Rather than finding the terms in question "plain and unambiguous," these courts find the language to be "ambiguous," and, applying the doctrine of *contra proferentum,* they construe the perceived ambiguities against the insurer who drafted the policy. *Dayton Hudson Corp. v. American Mutual Liability Ins. Co.,* 621 P.2d 1155, 1158 (Okl.1980); *Harrell v. Travelers Indemnity Co.,* 279 Or. 199, 567 P.2d 1013, 1015 (Or.1977); *Greenwood Cemetery, Inc. v. Travelers Indemnity,* 238 Ga. 313, 232 S.E.2d 910, 913 (Ga.1977). There is, perhaps, a third group of cases in which the court appears to base its construction of the policy language on the reasonable expectations of the insured, *Lazenby v. Universal Underwriters Ins. Co.,* 214 Tenn. 639, 383

8. In support of its holding, the Court stated:
"Punitive damages, as the descriptive name clearly implies, are awarded as a punishment. They are never awarded as compensation. 'They are awarded above and beyond actual damages, as a punishment for the defendant's intentional wrong. They are given to the plaintiff in a proper case, not because they are due, but because of the opportunity the case affords the court to inflict *punishment for conduct intentionally* wrongful.' . . . Punitive damages are never awarded merely because of a personal injury inflicted nor are they measured by the extent of the injury; they are awarded because of the outrageous nature of the wrongdoer's conduct. Being awarded solely as punishment to be inflicted on the wrongdoer and as a deterrent to prevent others from engaging in similar wrongful conduct, punitive damages can in no proper sense be considered as being awarded 'only with respect to personal injury' or as damages which are payable ['] because of personal injury.' Compensatory damages, which are awarded to compensate and make whole the injured party and which are therefore to be measured by the extent of the injury, are the only damages which are payable 'because of personal injury'." *Id.* 220 S.E.2d at 406.

9. In the *Norfolk* case, the only question "seriously in dispute" was whether coverage for punitive damages was against the public policy of Indiana. In a footnote, the Court stated:
"Of course, a threshold question may be posed, whether the language of the insurance contract admits of a construction which allows coverage for punitive damages. The contract covers 'all sums which the insured shall become legally obligated to pay.' The contract's explanation of the term 'damages' is that it 'includes' certain items, namely, that it 'includes damages for death [etc.].' The explanation does not attempt to be all-inclusive, and it is in any event a circular definition. The contract nowhere mentions punitive damages, although it was within Hartford's power to exclude such coverage. The policy unambiguously covers 'all sums.' Punitive damages are a form of damages; when liquidated by judgment, they are a 'sum.' Thus, this contract does not even present such an ambiguity as would call into play the rule that ambiguities in insurance contracts should be resolved in favor of the insured." *Id.* 420 F.Supp. at 94, fn. 1.

10. In support of its conclusion that punitive damages were covered, the court stated:
"When we consider that under our law, one cannot become legally obligated to pay punitive damages unless actual damages have been sustained and assessed, we find that punitive damages constitute a sum which the insured becomes legally obligated to pay as damages because of bodily injuries sustained." *Id.* 440 S.W.2d at 584.
This logic is obscure. The court may be confining the term "actual damages" to that class of cases in which the plaintiff must show a measurable injury before he has valid claim for any kind of damages.

S.W.2d 1, 5 (Tenn.1964);[11] *Abbie Uriguen Olds Buick, Inc. v. United States F.I. Co.,* 95 Idaho 501, 511 P.2d 783, 788 (Idaho 1973).[12] As used in these cases, the rule of construction, in some respects, parallels the rule for construing adhesion contracts. *See Estrin Const. Co., Inc. v. Aetna Cas. & Sur.,* 612 S.W.2d 413, 419 (Mo.App.1981). *See also Robin v. Blue Cross Hosp. Service, Inc.,* 637 S.W.2d 695, 697 (Mo. banc 1982).[13]

We understand and appreciate the logic of the decisions Schnucks relies on. However, opposing these decisions which find the terms in question either "unambiguous" or "ambiguous" and construe the terms as providing coverage for punitive damages are the decisions of our appellate courts which find no ambiguity and construe, *Crull v. Gleb,* 382 S.W.2d *supra* at 23, with agreement, *See Colson v. Lloyd's of London,* 435 S.W.2d *supra* at 46–47, these same terms as providing no coverage for punitive damage. Moreover, the construction urged by Schnucks gains no support from the rule of reasonable expectations peculiar to adhesion contracts. Neither Schnucks nor the other parties explicitly consider the present insurance contracts to be adhesion contracts; nor do we. "An adhesion contract is a form of contract created by the strong-er of the contracting parties. It is offered on a 'take this or nothing basis' .... Consequently, the terms of the contract are imposed upon the weaker party who has no choice but to conform ...." *Robin v. Blue Cross Hosp. Service, Inc.,* 637 S.W.2d *supra* at 697. The present policies were negotiated between Schnucks and Transamerica, and between Schnucks and Mission. From the record, neither Transamerica nor Mission, when compared to Schnucks, can be characterized as the "stronger party" who "imposed" the policy terms in question upon Schnucks on a "take this or nothing basis." *Id.* at 697.

Schnucks does, however, argue that its prior course of dealings with Transamerica raises a reasonable expectation of coverage for punitive damages. Schnucks cites language used in *Lazenby v. Universal Underwriters Ins. Co.,* 383 S.W.2d at 5, for the principle that its policies should be interpreted in accord with this expectation. (*See* language quoted in fn. 11, *supra* ). To support this argument factually, Schnucks uses a letter written by Mr. Ned L. Shively, Transamerica's vice-president in charge of claims. Schnucks interprets this letter as stating that in the past Transamerica covered all claims for damages against Schnucks,

11. Construing policy terms almost identical to the terms in issue here, the court stated:

"The language in the insurance policy in the case at bar, which is similar to many types of liability policies, has been construed by most courts, as a matter of interpretation of the language of the policy, to cover both compensatory and punitive damages. Since most courts have so construed this language in the policy, we think the average policy holder reading this language would expect to be protected against all claims, not intentionally inflicted." *Id.* 383 S.W.2d at 5.

12. To find the policy covered punitive damages, the court reasoned:

"We point out that the policy provisions ... make no distinction as between actual and punitive damages. Punitive damages are not specifically excluded from the policy language. Under the provision of the policy, the company promises to pay on behalf of the insured *all* sums which the insured shall be legally obligated to pay as *damages* caused by the use of any automobile. The law is clear in Idaho that insurance policies are to be construed most liberally in favor of recovery .... Since policies are written by com-panies without any arms length bargaining between the parties all ambiguities are resolved in favor of the insured." (Emphasis theirs). *Id.* 511 P.2d at 789.

13. The Supreme Court defined an adhesion contract to be:

"... a form contract created by the stronger of the contracting parties. It is offered on a 'take this or nothing' basis. *See Estrin,* 612 S.W.2d at 418 n. 3. Consequently, the terms of the contract are imposed upon the weaker party who has no choice but to conform. 3 Corbin on Contracts, § 559 (1960). These terms unexpectedly or unconscionably limit the obligations and liability of the drafting party. *See* Corbin on Contracts, § 559 (Kaufman Supp.1980). Because of these circumstances, some courts look past the wording of the contract and consider the entire transaction in order to effectuate the reasonable expectations of the parties. 3 Corbin on Contracts, §§ 534–542 (1960); Restatement (Second) of Contracts, §§ 226–227 (Tentative Draft 1973)." *Id.* 637 S.W.2d at 697.

including those that originated in a prayer for punitive damages.[14] Transamerica counters with the equally forceful argument that the course of dealings between it and Schnucks is reflected in the series of letters sent by Transamerica to Schnucks advising Schnucks, after each of the underlying lawsuits was filed, that the policy then in force did not cover punitive damages. Moreover, Transamerica argues that Schnucks, in effect, acquiesed in Transamerica's denial of coverage for punitive damages when it renewed its policy a second and third time while continuing to receive the letters denying coverage for punitive damages.

■■ Neither Schnucks' nor Transamerica's argument is relevant and, thus, neither argument is persuasive. Our courts have interpreted the language in the Schnucks-Transamerica policy without finding any ambiguity. *Crull v. Gleb, supra; see also, Colson v. Lloyd's of London, supra.* In the absence of ambiguity, extrinsic evidence may not be used to construe the meaning of a contract. *E.g., J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club,* 491 S.W.2d 261, 264 (Mo. banc 1973). Therefore, neither Shively's letter nor the series of letters sent from Transamerica to Schnucks can be used to change the meaning of the policy language in question.

As we have noted, the meaning of the policy language in question varies from jurisdiction to jurisdiction, probably varying as much as the dialects of those jurisdictions vary. We see no need to compound that variance by varying the meaning of that language, within our jurisdiction, as the composition of our courts vary.

Having concluded the policies in question provide no coverage for punitive damages,

we do not reach the question of whether our state's public policy prohibits insurance coverage for vicariously imposed punitive damages and whether Transamerica breached its contracts by refusing to defend Schnucks against claims for punitive damages.

Judgment affirmed.

SMITH, P.J., and PUDLOWSKI, J., concur.

---

**14.** Shively's letter was written after the present declaratory judgment action was filed. In its brief, Schnucks quotes the following portion of the letter:

"On the positive side, as is our practice, we have settled and paid numerous claims made against you, out of court, and in a lump sum, even though we were initially confronted with a claimant's demand for both compensatory and punitive damages, stated in separate amounts. In cases where the court settled the issue and awards were given, the award in each instance has been a lump sum. The initial demand for punitive and/or exemplary damages was either dropped by the claimant, denied by the court or disguised in the compensatory award given.

By such results, we have demonstrated a pattern of fairly defending and protecting your interests."