Chet A. KEELER, and Sandra Keeler,
Plaintiffs-Respondents,

v.

FARMERS AND MERCHANTS INSUR-
ANCE COMPANY, A Corporation,
Defendant-Appellant.

No. 14677.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 3, 1987.

Michael J. Patton, Turner, Reid, Duncan, Loomer & Patton, P.C., Springfield, for plaintiffs-respondents.

E. Mitchell Hough, Dale L. Davis, Bussell, Hough, O'Neal, Crouch & Hall, Springfield, for defendant-appellant.

GREENE, Presiding Judge.

Defendant, Farmers and Merchants Insurance Company (Farmers), appeals from the trial court's judgment affirming a jury verdict in the total sum of $50,500 in favor of plaintiffs, Sandra Keeler and her husband, Chet A. Keeler.

An agreed statement of facts and the legal issue involved has been filed here, pursuant to Rule 81.13,[1] which reads as follows:

> On July 13, 1984, plaintiff Sandra Keeler awoke at her home in rural Webster County and was preparing to go to work. As she was doing so, she noticed an automobile driven by Bradley Bertoldie, pull into her driveway. She observed Bertoldie take a machete and smash the front windshield of her car and leave. She knew Bertoldie from high school and knew he 'wasn't right.' Since her in-laws lived a short distance down the road, Mrs. Keeler got in her car and attempted to drive to their home to get help. As she was pulling from the driveway, Bertoldie came back up the road, left the roadway and intentionally collided with her car, causing it to overturn.

> Bradley Bertoldie was arrested at the scene and ultimately charged with the Class A felony of assault, first degree. As a result thereof he was committed to the Department of Mental Health by reason of the court's finding of not-guilty by reason of mental disease or defect. Prior to the incident, Bertoldie had been declared incompetent by the Probate Court of Webster County, Missouri.

> Bradley Bertoldie, at the time of the incident, was uninsured. Plaintiffs were the named insureds under two policies of automobile insurance issued by the defendant, Farmers and Merchants Insurance Company. Plaintiffs filed suit against the defendant Farmers and Merchants Insurance Company whereby they sought recovery under the uninsured motorist provisions of the aforesaid automobile policies.

> The parties stipulated that Bertoldie intentionally ran his vehicle into the vehicle being operated by Sandra Keeler.

> As a result of the aforesaid incident, Sandra Keeler received a broken tibia and fibula, as well as facial scars. After a jury trial, she was awarded Fifty Thousand Dollars ($50,000) in damages, and her husband, Chet Keeler, was awarded Five Hundred Dollars ($500) in damages for loss of consortium. There is no issue on this appeal as to the true amount or the propriety of these damages as awarded.

The sole issue on appeal is whether or not the two identical policies of insurance issued by defendant provide uninsured motorist coverage for an intentional act by an uninsured motorist. Defendant's point relied on is as follows:

> 'The trial court erred in overruling defendant's motion to dismiss, motion for judgment on the pleadings, motion for directed verdict at the close of plaintiffs' evidence, motion for directed verdict at the close of all the evidence, and further erred in entering judgment in favor of plaintiffs and in denying defendant's motion for judgment notwithstanding the verdict because the pleaded, stipulated, and proven facts in the case established that plaintiffs were not entitled to any recovery against defendant in that the provisions of the uninsured motorist coverage portion of the automobile policies issued to plaintiffs by defendant provided coverage only for damages "caused by an accident" and the injuries resulting to plaintiffs from the admittedly intentional acts of Bradley Dale Bertoldie were thus outside the scope of the coverage afforded.'

The Legal File and necessary exhibits will be filed separately.

---

1. All references to rules are to Missouri Rules of Court, V.A.M.R.

This is a case of first impression in Missouri. Farmers takes the position that the Keelers had no coverage under the policy, since the acts of Bertoldie were intentional and, for that reason, the trial court erred in allowing the Keelers to maintain their suit against Farmers wherein they sought recovery under the uninsured motorist provisions of their policies.

We do not agree with Farmers' position on the issue at hand, and affirm the judgment of the trial court.

We note from the record that criminal charges of first degree assault were filed against Bertoldie as a result of the incident in question. After a mental examination of Bertoldie, the trial court found that, at the time of the offense, Bertoldie was suffering from a mental disease or defect excluding responsibility in that he did not understand the nature and wrongfulness of his conduct, and that he was unable to conform his conduct to the requirements of law, and, for that reason, was not guilty of the criminal charge.

Surprisingly, the Keelers have not raised the question of whether, in view of the trial court's findings in the criminal case, Bertoldie's conduct in ramming the Keeler automobile could be classified as an intentional act, since the mental disease finding negates the issue of intent. Be that as it may, we address the questions raised by Farmers in their brief filed here. Farmers contends that the uninsured motorist provisions of its policy provide coverage only if the injuries suffered by its insured are the result of an accident, and that since Bertoldie's acts were intentional, there was no accident and, therefore, no coverage.

The insuring agreement for uninsured motorist coverage is contained in "Part E" of the policies in question. It provides that Farmers will pay damages, within the limits of the coverage provided, that a covered person is legally entitled to recover from the owner or operator of an owner or operator of an uninsured motor vehicle because of bodily injury: "1. Sustained by a covered person; and 2. Caused by an accident." No definition of the word "accident" is contained in the policy. The exclusions provisions of Part E do not exclude coverage in cases where the injury to the insured was caused by the intentional acts of an uninsured motorist.

In cases involving situations where the *insured* is the wrongdoer, our courts have consistently held that damage intentionally inflicted by the insured does not constitute an "accident" so as to provide liability insurance protection for the insured when a claim for damages is brought by an innocent injured party. *See Fidelity and Cas. Co. of New York v. Wrather*, 652 S.W.2d 245, 249 (Mo.App.1983), and *White v. Smith*, 440 S.W.2d 497, 507 (Mo.App. 1969). The rationale of those cases is that, as a matter of public policy, a person should not be able to insure himself from having to bear the consequences of his own intentional acts. We endorse and reaffirm such legal philosophy.

However, in this case, we are dealing with a different kettle of fish. Here, Sandra Keeler was not the intentional aggressor. She certainly did not intend to be injured, and her injuries were "accidental," as far as she was concerned. Well reasoned opinions from other states support this conclusion. In *Leatherby Insurance Company v. Willoughby*, 315 So.2d 553, 554–555 (Fla.App.1975), the uninsured motorist provisions of the policy obligated the company to pay damages to its insured in cases where the insured received bodily injury as the result of an accident. The insured was injured as the result of the intentional act of an uninsured motorist. In holding there was coverage, the court stated, in reference to liability coverage and uninsured motorist coverage, "First of all, we allude to our first observation that the two types of policies are conceptually dissimilar. Under uninsured motorist coverage the innocent injured party, not the intentional tortfeasor is the 'insured'; and clearly, viewing the matter from the standpoint of the innocent victim, the injury is an 'accident.'" The court went on to say, "the aforesaid public policy considerations militating against self-indemnification for intentional wrongs, which perhaps may be at least partially viable in the ordinary lia-

bility indemnification contract as noted, are obviously totally irrelevant under the uninsured motorist concept." In *Celina Mutl. Ins. Co. v. Saylor*, 35 Ohio Misc. 81, 301 N.E.2d 721, 723 (1973), the court held, "The intent in the mind of the insured at the time of injury should determine whether the acts are accidental or intentional. To look through the eyes of the uninsured rather than the insured in this factual situation would require an unconscionable twisting of the obvious purpose of purchasing insurance coverage." In *Sciascia v. American Ins. Co.*, 183 N.J.Super. 352, 443 A.2d 1118, 1120 (1982), aff'd 189 N.J.Super. 236, 459 A.2d 1198 (App.Div.1983), the court held there is a substantial difference in public policy regarding cases where the insured intentionally causes injury, and cases where the insured is the victim of injury intentionally inflicted by an uninsured motorist, and stated that the legal principle that intentional acts causing injury are not considered to be "accidental" in liability coverage questions, has no application in evaluating uninsured motorist coverage, for the reason that in the uninsured motorist cases, the insured is the victim, and not the tortfeasor. Other case holdings in accord with *Leatherby, Celina,* and *Sciascia*, are *Redden v. Doe*, 357 So.2d 632 (La.App.1978); *Davis v. State Farm Mutual Automobile Ins. Co.*, 264 Or. 547, 507 P.2d 9 (banc 1973); *Ala. Farm Byr. Mut. Cas. Ins. Co. v. Mitchell*, 373 So.2d 1129 (Ala.Civ.App.1979); *Country Companies v. Bourbon by Bourbon*, 122 Ill.App.3d 1061, 78 Ill.Dec. 407, 462 N.E.2d 526 (5 Dist.1984), and *Milwaukee Mut. Ins. Co. v. Butler*, 615 F.Supp. 491 (D.C.Ind.1985) (applying Indiana law). The only cases holding contrary, that we have found, or that have been referred to us by the parties, are New York cases such as *McCarthy v. Motor Vehicle Accident Indem. Corp.*, 16 A.D.2d 35, 224 N.Y.S.2d 909 (1962).

■ We have considered the New York cases, which hold that the statutorily required uninsured motorist endorsement under consideration there was "to give the same protection to a person injured by an uninsured motorist, as he would have had if he had been injured in an accident caused by an automobile covered by a standard liability insurance policy ...", *McCarthy, supra,* 224 N.Y.S.2d at 916, and since in such case the tortfeasor would have no coverage, coverage should also be denied to the victim who is seeking damages under the uninsured motorist provisions of his policy. We believe the New York cases are poorly reasoned, and are out of step with the great weight of authority cited above. We hold that the definition of the term "accident" should be determined from the insured's perspective, and that there is no public policy in Missouri which prohibits an insured from obtaining insurance to compensate him for injuries inflicted by an intentional tortfeasor. We further hold that the policies under consideration here do not exclude coverage because of the alleged intentional act of Bertoldie in ramming Mrs. Keeler's car.

■ We further hold that even if Farmers had attempted in the uninsured motorist provisions of its policies, to deny coverage if the act of the uninsured motorist causing injury had been intentional, it would be prohibited by law from doing so. Section 379.203.1 requires coverage in any automobile insurance policy "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury...." The statute does not specify the nature of the conduct of the uninsured motorist that caused the injury, or exclude from coverage damages caused by intentional acts of the tortfeasor.

It is crystal clear that the Keelers were legally entitled to recover damages from Bertoldie, or from his estate if he had been declared incompetent. Any attempt by Farmers to restrict or avoid the mandated coverage would be invalid, as it would be an attempt to evade the expressed purpose of the statute, and, as such, would be void as against public policy. *Craig v. Iowa Kemper Mut. Ins. Co.*, 565 S.W.2d 716, 725 (Mo.App.1978).

Although § 379.203 has not been construed by a Missouri appellate court in a

case involving an intentional act by an uninsured motorist which caused bodily injury to an insured, the Supreme Court of Ohio, in *Kish v. Central Nat. Ins. Group of Omaha,* 67 Ohio St.2d 41, 424 N.E.2d 288 (1981), faced the same issue we have here. The Ohio statute is similar to ours in that it requires uninsured motorist coverage in automobile insurance policy "for the protection of persons insured ... who are legally entitled to damages from owners or operators of uninsured motor vehicles because of bodily injury...." *Id.,* 424 N.E.2d at 290. The Ohio court held that the nature of the tortious conduct of the uninsured motorist is not defined in the statute, and the statute only requires that the uninsured motorist be legally liable to the injured person, and the fact that the injury was intentionally inflicted did not conflict with the expressed wording of the statute. The rational applied in *Kish* is persuasive.

There is no Missouri case that reaches a contrary result in a factual situation such as we have here. Farmers, through somewhat convoluted reasoning, attempts to convince us that language used in cases such as *Brake v. MFA Mutual Insurance Company,* 525 S.W.2d 109 (Mo.App.1975), cert. den. 423 U.S. 894, 96 S.Ct. 192, 46 L.Ed.2d 126 (1975), to the effect that uninsured motorist statutes have a remedial purpose, which is " ' "to give the same protection to the person injured by an uninsured motorist as he would have had if he had been injured in an accident caused by an automobile covered by a standard liability policy," ' " *Id.* at 112, bars recovery here. *Brake* did not involve an intentional act of an uninsured motorist, but involved a collision caused solely by negligence of underinsured motorist. It is inapplicable on the facts.

■ The true public policy involved in our uninsured motorist statute is to see that every insured under such coverage have available the full statutory minimum amount of coverage to exactly the same extent as would have been available had the tortfeasor complied with the minimum requirements of the financial responsibility law. *Webb v. State Farm Mutual Automobile Ins. Co.,* 479 S.W.2d 148, 152 (Mo. App.1972).

Section 379.203 requires uninsured motorist coverage when the uninsured motorist is legally liable to the insured. The statute does not distinguish between negligent or intentional acts, and we will not read into the statute something that is not there. The Keelers have uninsured motorist coverage because they were injured by Bertoldie's act; Bertoldie is legally liable to them, and he was uninsured.

Farmers' argument in support of its position has no merit.

Judgment affirmed.

CROW, C.J., and PREWITT, J., concur.