Robert **MORELAND** and Winona
Moreland, Plaintiffs–
Appellants,

v.

**COLUMBIA MUTUAL INSURANCE
COMPANY, Defendant–
Respondent.**

No. 17644.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 1, 1992.

Ronald D. White, Joseph W. Rigler, Mark Turley, Williams, Robinson, Turley, Crump & White, Rolla, for plaintiffs-appellants.

Gerard T. Noce, Adrian P. Sulser, St. Louis, for defendant-respondent.

SHRUM, Presiding Judge.

On May 22, 1992, this district filed an opinion reversing the judgment and remanding the cause. On June 15, 1992, this district denied both the plaintiffs' and the defendant's motions for rehearing or transfer to the Missouri Supreme Court. The defendant then filed application for transfer with the supreme court, which sustained the application on July 21, 1992. On November 24, 1992, the supreme court entered the following order: "Cause ordered retransferred to the Missouri Court of Appeals, Southern District." With the addition of this paragraph, our original opinion is readopted. It is set out hereafter.

This action by the plaintiffs, Wayne and Winona Moreland, against Columbia Mutual Insurance Company (Columbia) seeks damages under an uninsured motorist coverage policy for the wrongful death of their minor daughter, Tina Moreland. At trial the plaintiffs tendered the version of MAI 5.01 which would have allowed the jury to consider aggravating circumstances. The trial court refused to submit that instruction to the jury.[1] Following a jury verdict for $75,000 the trial court entered a judgment for $30,000, that being the jury verdict sum less $45,000 previously paid to the plaintiffs under settlements made with Cameron Mutual ($22,500) and American Family Mutual Insurance Company ($22,500). The plaintiffs appeal from that judgment, raising two first impression issues.

1. Does the language of the uninsured motorist statute[2] and Columbia's policy language exclude Columbia from responsibility for damages arising from any aggravating circumstances surrounding the death so that the jury is not to be instructed on this issue?

We answer no and reverse and remand because the evidence supported the giving of the aggravating circumstances versions of MAI 5.01.

2. Is Columbia entitled to a dollar-for-dollar credit, here $45,000, for all sums paid by other carriers? The plaintiffs would have us answer no. They contend that Columbia was entitled to only a one-third reduction, $25,000, in the jury's verdict, representing the pro rata share of the liability which had been previously settled.[3]

We answer in the affirmative. The trial court properly credited Columbia with all sums paid to the plaintiff by others because the position contended for by the plaintiffs would enable them to receive more damages than what the jury determined they were entitled to.

---

1. The version of MAI 5.01 refused by the trial court included the following language: "In assessing damages you may take into consideration any aggravating circumstances attendant upon the fatal injury."

2. § 379.203, RSMo 1986, the "uninsured motorist statute" is often referred to herein as the "UM statute."

3. The amount of the judgment which the plaintiffs contend for is calculated as follows: $100,000 (Columbia's coverage) divided by $150,000 (total UM coverage) equals two-thirds, and two-thirds of the $75,000 verdict is $50,000.

## FACTS

On August 4, 1989, Tina Moreland, age 11, died instantly as a result of injuries she sustained in a motor vehicle accident which occurred on highway 32 in Dent County, Missouri. Tina was a passenger in a Buick being driven by her grandmother, Louise Moreland. The Buick was being driven easterly in the east-bound lane of highway 32 when it was struck head-on by a 1968 Ford Thunderbird that was traveling west in the east-bound lane. At the time the driver of the Thunderbird, Bradley Floyd, was attempting to pass a west-bound pick-up truck driven by Michael Manthey. Louise Moreland and Floyd were also killed in the accident. A passenger in Floyd's car, Greg Buttler, was injured when he was thrown from the Thunderbird as a result of the impact.

There were four witnesses to the collision. They were Marlene Inman, who lived near the accident scene; Buttler; Manthey; and a passenger in Manthey's pickup, Laura Cahill. All testified that where Floyd attempted to pass Manthey, the highway was marked "no passing" because of a sight obstruction caused by a dip in the road. Manthey and Cahill further testified that Floyd had made several earlier attempts to pass their pickup, running up behind them, blinking his headlights, and tailgating. Manthey estimated the speed of the Thunderbird at 70 to 75 miles per hour as it crossed the center line to pass. He described Floyd's driving as "very reckless, careless," and Cahill said it was "reckless." Buttler testified that Floyd had drunk five to six beers en route from Berkeley, Missouri. Patrolman Fredendall, who investigated the accident, smelled the odor of alcohol about Floyd's body. Buttler also testified that before the accident he told Floyd to slow down, but Floyd failed to respond.

Floyd had no liability insurance coverage on the Thunderbird. Three automobile insurance policies provided uninsured motorist (UM) coverage applicable to the death of Tina as follows: Cameron Mutual Insurance Company, $25,000; American Family Mutual Insurance Company, $25,000; and Columbia, $100,000. Before trial the plaintiffs settled their UM claim against Cameron for $22,500 and their UM claim against American for $22,500.

Portions of Columbia's insurance policy are quoted where pertinent to the issue under discussion.

## DISCUSSION AND DECISION

*Plaintiffs' Point II: May Aggravating Circumstances Be Submitted in an Uninsured Motorist Case?*

■ The plaintiffs' second point on appeal is dispositive. They contend that the trial court abused its discretion when it refused to include in the damage instruction, MAI 5.01, the following optional language:

> In assessing damages you may take into consideration any aggravating circumstances attendant upon the fatal injury.

They point to evidence of Floyd's (a) drinking five to six beers and driving; (b) driving in what witnesses characterized as a "very reckless and careless manner" immediately before the accident; (c) alternately tailgating another vehicle, then backing off, and then attempting to pass; (d) repeated attempts to pass another vehicle and finally pulling around that vehicle in a "no passing" zone; (e) refusal to heed his passenger's request to "slow down"; (f) passing where oncoming traffic could not be seen; and (g) driving 70 to 75 miles per hour in a passing lane when his ability to see oncoming traffic was obscured. They contend that such facts present a submissible jury issue of aggravating circumstances.

■ We agree. Facts similar to the foregoing tend to show aggravating circumstances within the meaning of the wrongful death statute. *See, e.g., May v. Bradford,* 369 S.W.2d 225 (Mo.1963); *Richeson v. Hunziker,* 349 S.W.2d 50 (Mo. 1961); *Dougherty v. Smith,* 480 S.W.2d 519 (Mo.App.1972). Upon this record, failure to give the requested instruction on aggravating circumstances was error if the assigned reason for the refusal is lack of

evidence to support it.[4] And indeed, Columbia does not seriously contend otherwise. Instead, it argues that the trial court properly refused the instruction because damages for aggravating circumstances are not encompassed by UM coverage, and the policy exclusions for punitive and exemplary damages preclude coverage for aggravating circumstances.

Initially we look to the insuring agreement, the UM statute, and the wrongful death statute. We then shall consider separately the policy's exclusion provision.

The insuring agreement for uninsured motorist coverage is contained in "Part C" of Columbia's policy. It reads:

> We will pay damages which an "insured" is *legally entitled to recover* from the owner or operator of an "uninsured motor vehicle" because of *"bodily injury"*.... (Emphasis added.)

Under paragraph D of the policy definitions, " '[b]odily injury' means bodily harm, sickness or disease, including *death that results."* (Emphasis added.) Columbia's insuring agreement meets the UM statute requirement which reads, in part:

> No automobile liability insurance ... shall ... be issued ... unless coverage is provided therein ... *for the protection of persons insured thereunder who are legally entitled to recover damages* from owners or operators of uninsured motor vehicles *because of* bodily injury, sickness or disease, including *death, resulting therefrom.* (Emphasis added.)

§ 379.203.1, RSMo 1986.

In arguing that there is coverage for aggravating circumstances damages in a wrongful death where the coverage is under the UM insuring agreement, the plaintiffs point to the wrongful death statute, § 537.090, RSMo 1986, which reads, in part:

> In every action brought under section 537.080, the trier of the facts may give ... such damages as the trier of the facts may deem fair and just for the death ... having regard to the pecuniary losses ..., funeral expenses, and the rea-

sonable value of the services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support of which those on whose behalf suit may be brought have been deprived by reason of such death.... In addition, the trier of the facts may award such damages as the deceased may have suffered between the time of injury and the time of death and for the recovery of which the deceased might have maintained an action had death not ensued. *The mitigating or aggravating circumstances attending the death may be considered by the trier of the facts....* (Emphasis added.)

The plaintiffs assert that because of the egregious facts in this case, § 537.090 legally entitled them to any additional damages which the trier of fact determined were owed because of the aggravating circumstances attending the death of their daughter. Being legally entitled to such damages from the motor vehicle operator, Floyd (or his estate), they would have us hold that Columbia's insuring agreement obligates Columbia to pay those damages and, hence, entitles them to have the jury so instructed.

Columbia responds that any portion of a wrongful death damage claim that is attributable to aggravating circumstances attending the death are the same as punitive damages and are not covered under the UM statute nor under its policy language. Its argument proceeds as follows: (1) "aggravating circumstances" are punitive in nature; *Blum v. Airport Terminal Services, Inc.,* 762 S.W.2d 67, 73 (Mo.App.1988); *Sunshine Realty Corp. v. Killian,* 702 S.W.2d 95, 104 (Mo.App.1985); (2) the purpose of aggravating circumstance damages is to punish a defendant and deter future wrongdoing, rather than to compensate; *Elliot v. Kesler,* 799 S.W.2d 97, 103 (Mo. App.1990); (3) an award of more than compensatory damages is permissible only if the decedent would have been entitled to recover punitive damages if such decedent

---

**4.** During the instruction conference the trial court gave no specific reason for its refusal to submit Instruction "A". No record was made of pre-trial conferences concerning this and other instructions.

had lived; *Id.* at 103; *Blum,* 762 S.W.2d at 73; and (4) Columbia, being only a provider of the UM coverage, is not the wrongdoer and the purpose underlying an award of punitive damages will not be served by passing such liability on to it.

Based on the foregoing, Columbia argues that the principles enunciated in *Schnuck Markets, Inc. v. Transamerica Ins.*, 652 S.W.2d 206 (Mo.App.1983), and *Crull v. Gleb,* 382 S.W.2d 17 (Mo.App.1964), apply here and justify the trial court's refusal to give the aggravating circumstances version of MAI 5.01. *Schnuck* and *Crull,* cases in which the insured was the wrongdoer, hold that policies which covered bodily injury did not extend coverage to punitive damages. In *Crull* the policy provided coverage for the insured for "all sums which the insured may become legally obligated to pay as damages because of bodily injury...." *Id.* at 19. Judge Greene assigned two reasons for finding no coverage for punitive damages. First, he construed the policy as providing no coverage, saying:

> There is no language in the policy that provides for the payment of judgments for punitive damages. The policy covers only damages for bodily injury and property damage sustained by any person. Punitive damages do not fall in this category. The $2,000 award of punitive damages to plaintiff was to punish defendant for his wrongful acts and as a warning to others. It was not to compensate plaintiff for bodily injury or property damage.

*Id.* at 23.

Second, the *Crull* opinion stated that to allow a party to insure himself against the civil punishment that punitive damages represent would be contrary to public policy.[5] *Id.* at 23.

. In *Schnuck,* 652 S.W.2d at 208, the policy language was similar to that in *Crull.* It read:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as dam-

ages because of bodily injury or property damage to which this insurance applies, caused by an occurrence.

Schnuck Markets contended that the policy language provided coverage for punitive damages. In doing so it focused on the policy provision which provided protection for "all sums which the insured shall become legally obligated to pay." That argument was rejected with the following observation:

> By narrowing its inquiry to the latter quoted phrase, Schnucks eliminates qualifying language which we consider critical. The policy does not simply provide coverage for "all sums which the insured may become legally obligated to pay" but, rather, provides coverage for "all sums which the insured may become legally obligated to pay as damages because of bodily injury...."

*Schnuck,* 652 S.W.2d at 208 (emphasis in original). The *Schnuck* court found there was a rational basis underpinning the construction of the policy language in *Crull,* which it explicitly articulated as follows:

> Punitive damages are not in the same category as damages "for bodily injury" or "for personal injury." "The chief purpose of punitive damages is punishment to the offender, and a deterrent to similar conduct by others." *Crull v. Gleb, supra* at 23. Punitive damages are never awarded as compensation. *Probst v. Probst,* 595 S.W.2d 289, 292 (Mo.App. 1979). They "are mere incidents to the cause of action and are considered separate and apart from and in addition to the assessment of actual damages." *Holcroft v. Missouri–Kansas–Texas R. Co.,* 607 S.W.2d 158, 163 (Mo.App.1980). While actual damages are measured by the extent of the injury, punitive damages are measured by the extent of the malice of the actor. *Schmidt v. Central Hardware Company,* 516 S.W.2d 556, 560 (Mo.App.1974); *Holcroft v. Missouri–Kansas–Texas R. Co., supra* at 163; *Compare* MAI 4.01 (actual dam-

---

5. In *Schnuck,* 652 S.W.2d at 209 n. 5, it is suggested that the *Crull* court's conclusion that no coverage for punitive damages was provided

because of the policy language makes the public policy conclusion mere dicta.

ages) with MAI 10.01–10.03 (punitive damages). Since punitive damages are never awarded merely because of a "bodily injury" or "personal injury" but only when the actor's conduct displays the requisite malice, we find they are not in the category of damages for "bodily injury" or "personal injury."

*Schnuck*, 652 S.W.2d at 209. Applying the foregoing principles to the policy language, the *Schnuck* court concluded that no coverage existed for punitive damages. It declined to reach the question of whether Missouri's public policy prohibited such coverage. *Id.* at 212.

Here Columbia contends that damages for aggravating circumstances and punitive damages are the same. Based upon that premise Columbia argues that the rationale of *Schnuck* and *Crull* should apply in a wrongful death case; that there is no coverage afforded for aggravating circumstances under Columbia's UM coverage; hence, the trial court did not err in rejecting the aggravating circumstances version of MAI 5.01. We disagree for the reasons which follow.

*Schnuck* and *Crull* were not wrongful death actions. In *Schnuck* the plaintiff sought a declaratory judgment that its insurer was obligated to provide coverage and defend twelve pending lawsuits. The actions were of three types: service letter actions under § 290.140, RSMo 1978; wrongful or false arrest actions; and actions in negligence for personal injuries, i.e., two automobile accident cases and one "slip and fall" case. In each case there was a prayer for punitive damages or allegations of gross negligence and willful and wanton misconduct. In *Crull* plaintiff sought actual and punitive damages based upon common law principles.

■ The common law principles underlying the claims for punitive damages in *Schnuck* and in *Crull* are inapplicable in a wrongful death action because a common law right of action for wrongful death has never existed in this state. *Glick v. Ballentine Produce Inc.*, 396 S.W.2d 609, 614 (Mo.1965). The exclusive remedy to recover damages for wrongful death is statutory. *Demattei v. Missouri–Kansas–Texas R.R. Co.*, 345 Mo. 1136, 139 S.W.2d 504 (1940); *Holt v. Burlington Northern R.R. Co.*, 685 S.W.2d 851 (Mo.App.1984). Legal entitlement to damages for wrongful death exists solely because the General Assembly created the cause of action. Since the legislature created the right of action where none existed before, it can condition and shape the right as it sees fit. *Glick*, 396 S.W.2d at 615. This includes creating a remedy for the newly created right.

In creating the wrongful death remedy the General Assembly has consistently refused to follow the common law principle, applied in personal injury cases, that compensatory damages for personal injury are in a category different from punitive damages. Indeed, the legislature has never permitted recovery in a wrongful death action for punitive damages, as such. *Glick*, 396 S.W.2d at 616; *Sunshine Realty*, 702 S.W.2d at 104. Instead, in 1855[6] and always thereafter, the legislature has authorized the trier of fact to consider aggravating circumstances, if the evidence justifies it, in assessing damages. This it has done (a) without defining "aggravating circumstances," *Blum*, 762 S.W.2d at 73; (b) without ascribing a reason or purpose for allowing aggravating circumstances to be considered; and (c) without permitting the trier of fact to separately state the amount of the actual and aggravated damages it is awarding. *Glick*, 396 S.W.2d at 616; *Contestible v. Brookshire*, 355 S.W.2d 36, 42 (Mo.1962), *cert. denied*, 371 U.S. 68, 83 S.Ct. 155, 9 L.Ed.2d 119 (1962); *Sunshine Realty*, 702 S.W.2d at 104.

By plain language the legislature placed damages for aggravating circumstances in the same category as all other statutory elements of damage recoverable for a

---

**6.** Chap. 51, § 4, Hardin's RSMo 1855, p. 648, reads, in part: "[I]n every such action, the jury may give such damages as they deem fair and just, not exceeding five thousand dollars ... to the surviving parties who may be entitled to sue, and *also, having regard to the mitigating or aggravating circumstances attending such wrongful act, neglect or default.*" (Emphasis added.)

wrongful death. Because they are inseparable from all other damages, aggravating circumstances damages do not serve as punishment and deterrent in the same sense as punitive damages because, to be fully effective as punishment and deterrent, everyone—the jury, the wrongdoer and the public—must know that civil punishment was imposed for the wrongful act and they need to know the nature and extent of the punishment.

That result is achieved in a suit for personal injury by (a) MAI 4.01[7] for actual damages, and (b) a separate and additional instruction for punitive damages wherein the jury is told that they are to award as such sum as they believe "will serve to punish defendant and to deter defendant and others from like conduct." *See, e.g.,* MAI 10.02.[8] Such instructions enable the jury to measure the actual damages by the extent of the injury and the punitive damages by the extent of the malice of the actor. *Holcroft v. Missouri–Kansas–Texas R. Co.,* 607 S.W.2d 158, 163 (Mo.App. 1980); *Schmidt v. Central Hardware Co.,* 516 S.W.2d 556, 560 (Mo.App.1974).

■ The foregoing is not possible in a wrongful death action. By MAI 5.01 (wrongful death),[9] additional damages because of aggravating circumstances, if there be any, are not considered separately by the jury, they are not assessed separately, and they are not placed in the verdict as a separate item of damage. Indeed, it is reversible error to submit aggravating circumstances for separate consideration by the jury even though such damages may, in a sense, be considered punitive in nature. *Glick,* 396 S.W.2d at 616–17; *Contestible,* 355 S.W.2d at 42; *Sunshine Realty,* 702 S.W.2d at 104.

We also observe that by wrongful death instructions a jury is not told why they are to consider aggravating circumstances. From the instructions and verdict form promulgated by the Missouri Supreme Court for use in a wrongful death case, no one knows the amount, if any, by which the damages were enhanced because of aggravating circumstances. That the compensation for the two types of losses—wrongful death and bodily injury—are conceptually different is implicit in the differing MAI measure of damage instructions promulgated by our Supreme Court. Those differences make the rationale of *Schnuck* and *Crull* inapplicable to a wrongful death action. Whereas punitive damages are clearly not a part of the compensation payable for bodily injury, the plain language of the wrongful death statute includes aggravating circumstance damages as an inseparable part of the compensation to which a claimant in a death case is legally entitled. This is so even if the legislature's unspoken purpose for allowing such damages was, in whole or in part, to punish and deter.

We cannot discern why the legislature has placed all damages recoverable in a wrongful death case, including those for aggravating circumstances, into the same

---

**7.** MAI 4.01 reads: "If you find in favor of plaintiff, then you must award plaintiff such sum as you believe will fairly and justly compensate plaintiff for any damages you believe he sustained [and is reasonably certain to sustain in the future] as a direct result of the occurrence mentioned in the evidence."

**8.** MAI 10.02 reads, in part: "Damages—Exemplary—Negligence Constituting Conscious Disregard for Others

If you find in favor of plaintiff under Instruction Number _____ (here insert number of plaintiff's verdict directing instruction based on negligence), and if you believe the' conduct of defendant as submitted in Instruction Number _____ ... showed complete indifference to or conscious disregard for the safety of others, then in addition to any damages to which you may find plaintiff entitled under Instruction Number _____ (*here insert number of plaintiff's damage instruction*) *you may award plaintiff an additional amount as punitive damages in such sum as you believe will serve to punish defendant and to deter defendant and others from like conduct.*" (Emphasis added.)

**9.** MAI 5.01 reads, in part: "Damages—Wrongful Death

"If you find in favor of plaintiff, then you must award plaintiff such sum as you believe will fairly and justly compensate plaintiff for any damages you believe plaintiff [and decedent] sustained [and plaintiff is reasonably certain to sustain in the future] as a direct result of the fatal injury to (*insert name of decedent*)

[In assessing damages you may take into consideration any aggravating circumstances attendant upon the fatal injury.]"

category. What is clear, however, is that the General Assembly, through repeated amendments to the wrongful death statute [10] and in the face of the long-standing common law practice of assessing punitive damages separately from actual damages, has been unwavering in its policy. By a 1979 amendment to § 537.090 the General Assembly broadened the measure of damages recoverable to include, in addition to aggravating circumstances damages, several other nonpecuniary damage items such as "[t]he reasonable value of the services, consortium, companionship, comfort, instruction, guidance, counsel, training and support." Also added was:

> [S]uch damages as the deceased may have suffered between the time of injury and the time of death and for the recovery of which the deceased might have maintained an action had death not ensued.

§ 537.090, RSMo 1986. Such language allows a trier of fact to compensate a claimant for pain and suffering of the decedent between the time of injury and the time of death. See MAI 5.01, Notes on Use (1981 Revision), p. 80, para. 3. In some respects allowing recovery of damages for the decedent's pain and suffering is akin to allowing recovery of damages for aggravating circumstances; both allow the jury to consider evidence that may enhance the damage amount, and both permit recovery by the claimant for something that he did not suffer. This illustrates that the legislature can create a statutory remedy any way it sees fit. By its latest word on the subject the legislature continued to place all elements of damage in a wrongful death case, pecuniary and non-pecuniary (including aggravating circumstance damages), into the same category. That being a policy choice made by the legislature in fashioning the wrongful death action, we defer to it.

We also observe that so-called tort reform legislation made no changes in the wrongful death statutes. Background on tort reform legislation follows.[11] In August 1986, the Missouri Interim Task Force on Liability Insurance was created by the leadership of the executive and legislative branches of Missouri government. The task force's purpose was to investigate and submit recommendations regarding Missouri's liability insurance industry and its tort system. Following an intensive investigative effort, the task force offered to the General Assembly a lengthy report dealing with the complex topics of liability insurance and the tort liability system. Included was a recommendation that the General Assembly enact legislation regarding the awarding of punitive damages.

The task force report discussed the two basic types of damages which can be recovered in court: compensatory damages, designed to compensate an injured party for the actual loss he has sustained, and "punitive damages," designed to serve public policy purposes of punishing and deterring. Noticeably absent from the task force report was any discussion of damages for aggravating circumstances and any attempt to equate aggravating circumstances damages with punitive damages. Equally absent from the task force report was any recommendation for change in the wrongful death statute, including the measure of damages section of that statute.

In 1987, the General Assembly, acting upon the task force recommendations, adopted RSMo § 510.263, which deals with, among other things, awards of punitive damages. By this legislation punitive damages are awarded in a two-stage trial. The first stage is devoted to determining liability for compensatory and punitive damages and the amount of compensatory damages.

---

10. Prior wrongful-death measure of damage provisions are: R.S.1855, pg. 648, sect. 4; R.S. 1889, sect. 4427; R.S.1899, Sect. 2866; L.1907, pg. 252; R.S.1909, Sect. 5427; R.S.1919, sect. 4219; R.S.1929, sect. 3264; R.S.1939, Sect. 3654; Amended by L.1945, p. 846; L.1955, P. 778, sect. 1, (Sect. 537.080); L.1967, p. 663, sect. 1; L.1973, H.B. No. 173, pg. 498, Sect 1; L.1979, S.B. No. 368, p. 630, Sect. 1.

11. We draw liberally from Nicholas P. Terry, Tort Reform–1987 (The University of Missouri–Columbia School of Law, Office of Continuing Legal Education) [1987] and from the "Final Report of the Missouri Task Force on Liability Insurance" dated January 6, 1987, attached to the foregoing as Exhibit "A".

Following a finding of liability for punitive damages, the same jury, in the second stage, determines the amount of punitive damages.

Totally absent from this legislation is any attempt to equate punitive damages with aggravating circumstances language. Nothing in the language of § 510.263 requires bifurcated trials when aggravating circumstances attend the death. Section 537.090 was not amended to place aggravating circumstances in a different category from other wrongful death damages. That the legislature chose to address punitive damages generally but remained silent on aggravating circumstances damages further convinces us that we must defer to the General Assembly's policy choice of treating them differently.

We are mindful that Missouri courts have repeatedly said that damages for aggravating circumstances are "punitive in nature" and their purpose is to "punish the wrongdoer" and "deter future wrongdoing." We observe, however, that such pronouncements are invariably found where the issue is whether the evidence supports the giving of the aggravating circumstances instruction. Left without other guidance as to when an instruction on aggravating circumstances should be given, Missouri courts quickly looked to the standard commonly associated with the award of punitive damages in a common law case.[12] That practice continues. *See, e.g., Elliot,* 799 S.W.2d at 103; *Blum,* 762 S.W.2d at 73. Use of the punitive damage standard of evidence to determine if an aggravating circumstance instruction should be given does not require equating "punitive damages" with "aggravating circumstances" damages. We find no case so holding when the issue is the existence or non-existence of liability insurance coverage or uninsured motorist coverage. We decline to fully equate aggravating circum-

stance damages with punitive damages when the legislature has chosen not to do so.

We presume that the General Assembly was well aware that it had historically and consistently authorized aggravating circumstances damages as an inseparable part of wrongful death damages when it first addressed the need for mandatory uninsured motorist coverage in Missouri. By § 379.203.1, RSMo Supp.1967, the legislature required that all automobile policies in Missouri have coverage "for the protection of persons insured thereunder who are legally entitled to *recover damages* from ... operators of *uninsured motor vehicles* because of ... *death....*" That portion of the statute has remained unchanged. As earlier observed, Columbia's insuring agreement complies with § 379.203.1 by providing: "We [Columbia] will pay damages which an 'insured' is *legally entitled to recover* from the owner or operator of an 'uninsured motor vehicle' because of ... *death that results.*" (Emphasis added.) By unambiguous language, mandated by the public policy of this state, Columbia's policy obligates it to pay to the plaintiffs all damages which the plaintiffs were legally entitled to recover from the uninsured driver, Bradley Floyd, in this wrongful death action. That entitlement includes aggravating circumstances damages because such damages are in the same category as all other damages recoverable for wrongful death.

We do not ignore the public policy arguments mentioned in *Schnuck* and in *Crull.* In those cases (involving *liability insurance*) the public policy discussion centered on the principle that a motorist should not be able to insure himself against judgments imposed against him for punitive damages; that for the theory of punitive damages (i.e., punishment and deterrent) to work, the wrongdoer must not be able to

---

12. *See, e.g., Parsons v. The Mo. Pac. Ry. Co.,* 94 Mo. 286, 299, 6 S.W. 464 (1887); *Morgan v. Durfee,* 69 Mo. 469 (1879); *Gray v. McDonald,* 104 Mo. 303, 16 S.W. 398 (1891); *Haehl v. Wabash R. Co.,* 119 Mo. 325, 24 S.W. 737 (1893); *Goode v. Central Coal & Coke Co.,* 167 Mo.App. 169, 151 S.W. 508 (Mo.App.1912); *Wiseman v.*

*Missouri Pac. R.R. Co.,* 575 S.W.2d 742 (Mo.App. 1978) (to warrant the submission of aggravating circumstances there must be a showing of willful misconduct, wantonness, recklessness, or a want of care indicative of indifference to the consequences).

transfer his responsibility for punitive damages to others. *See, e.g., Crull,* 382 S.W.2d at 23. The rationale is that, as a matter of public policy, a person should not be able to insure himself from having to bear the consequences of his own intentional acts or his complete indifference to or conscious disregard for the safety of others. Whether such legal philosophy should be considered when the issue is coverage for aggravating circumstances damages under a *liability* policy is not before us because an uninsured motorist policy is here involved rather than a liability policy. The two types of policies are conceptually dissimilar. *Keeler v. Farmers and Merchants Ins. Co.,* 724 S.W.2d 307, 309 (Mo. App.1987).

That recognized difference led us to hold in *Keeler* that an uninsured motorist policy provision covered an intentional act by an uninsured motorist. Quoting with approval from *Leatherby Ins. Co. v. Willoughby,* 315 So.2d 553, 554–55 (Fla.App.1975), we said:

> Under uninsured motorist coverage the innocent injured party, not the intentional tortfeasor is the "insured"; .... "[T]he aforesaid public policy considerations militating against self-indemnification for intentional wrongs, which perhaps may be at least partially viable in the ordinary liability indemnification contract as noted, are obviously totally irrelevant under the uninsured motorist concept."

*Keeler,* 724 S.W.2d at 309–10.

In *Keeler* we also relied upon *Sciascia v. American Ins. Co.,* 183 N.J.Super. 352, 443 A.2d 1118, 1120 (1982), *aff'd* 189 N.J.Super. 236, 459 A.2d 1198 (App.Div.1983), as follows:

> [T]here is a substantial difference in public policy regarding cases where the insured intentionally causes injury, and cases where the insured is the victim of injury intentionally inflicted by an uninsured motorist.... [T]he legal principle that intentional acts causing injury are not considered to be "accidental" in liability coverage questions, has no application in evaluating uninsured motorist cover-

age, for the reason that in the uninsured motorist cases, the insured is the victim, and not the tortfeasor.

*Id.* at 310.

Although punitive damages were not at issue in *Keeler,* the principles enunciated in that case clearly apply where, as here, the insured seeking aggravating circumstances damages was the victim and not the tortfeasor. Any public policy militating against self-indemnification for aggravating circumstances damages (which public policy may or may not exist in a Missouri wrongful death case) are irrelevant under the uninsured motorist concept. Columbia's argument to the contrary is rejected.

Columbia also argues that exclusionary language in its policy excludes coverage for aggravating circumstance damages. Specifically, it relies on a general endorsement to the policy which reads:

## PUNITIVE OR EXEMPLARY DAMAGES EXCLUSION

Regardless of any other provision of this policy, this policy does not apply to punitive or exemplary damages. (Definition: "punitive or exemplary damages" means damages which may be imposed to punish a wrongdoer or to deter others from similar conduct.)

Columbia urges that because "aggravating circumstances" damages are punitive in nature, the foregoing language excludes coverage and justified refusal of the instruction. We disagree.

As earlier observed, punitive or exemplary damages, as such, are not recoverable in a wrongful death case. *Glick,* 396 S.W.2d at 616; *Sunshine Realty,* 702 S.W.2d at 104. Since 1855, damages for aggravating circumstances have been authorized in a wrongful death case. If Columbia had intended by this provision to exclude coverage for aggravating circumstances, it could have made such intention crystal clear by merely saying, "This policy does not apply to punitive or exemplary *or aggravating circumstances* damages." Such language is absent and it is inappropriate for us to re-write the contact.

■ Even if Columbia's exclusionary provision were written to exclude aggravating circumstances damages caused by an uninsured motorist from coverage, such provision would be prohibited by law.

Section 379.203.1 requires coverage in any automobile insurance policy "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury...." The statute does not specify the nature of the conduct of the uninsured motorist that caused the injury, or exclude from coverage damages caused by intentional acts of the tortfeasor.

*Keeler*, 724 S.W.2d at 310.

Because we have already determined that aggravating circumstances damages are an integral and inseparable part of the actual damages which the claimant is entitled to recover in a wrongful death case, even if their purpose is, in whole or in part, to punish and deter, and because the uninsured motorist statute does not specify the nature of the conduct of the uninsured motorist that caused the injury or exclude from coverage any enhanced damages from aggravating circumstances, any attempt by Columbia to restrict or avoid the mandated coverage would be invalid because "it would be an attempt to evade the expressed purpose of the statute, and, as such, would be void as against public policy." *Keeler*, 724 S.W.2d at 310.

Section 379.203 requires uninsured motorist coverage when the uninsured motorist is legally liable to the insured. *Keeler*, 724 S.W.2d at 311. Neither the wrongful death statute nor the uninsured motorist statute distinguishes between aggravated circumstances damages and other damages recoverable in a wrongful death action. Common law principles that make a clear distinction between punitive damages and compensatory damages in a bodily injury case have no applicability to the purely statutory measure of damages in a wrongful death case. We hold that the trial court erred in refusing to give the aggravating circumstances version of MAI 5.01. For

that reason we reverse the damage award and remand.

*Plaintiffs' Point I: Credit against Damage Award*

We discuss the plaintiffs' first point on appeal because the issue might reappear on retrial.

■ Where there are several "layers" or "stacks" of automobile insurance coverage available to respond to the same injury or death, Missouri courts have held that the insurers involved are obliged to contribute pro rata to the loss to the extent of their combined coverage. *Cameron Mutual Ins. Co. v. Madden*, 533 S.W.2d 538 (Mo. banc 1976); *Cordell v. American Family Mutual Ins. Co.*, 677 S.W.2d 415 (Mo.App. 1984); *Midwest Mutual Ins. Co. v. The Aetna Casualty & Surety Co.*, 565 S.W.2d 711 (Mo.App.1978); *Steinhaeufel v. Reliance Ins. Companies*, 495 S.W.2d 463 (Mo. App.1973). Such principle is based, in part, on the strong public policy underlying the uninsured motorist coverage statute, § 379.203, RSMo 1978. *State Farm Mut. Auto. Ins. v. MFA Mut. Ins.*, 671 S.W.2d 276, 277 (Mo.banc 1984).

Relying on the foregoing principles, the plaintiffs urge us to find that the amount of the judgment on this verdict should reflect Columbia's pro rata responsibility to pay the loss, i.e., two-thirds of $75,000. They contend for that amount in contrast to the amount that resulted after the trial court fully credited Columbia for the $45,000 paid in settlement by the two insurers who were concurrently liable with Columbia. The plaintiffs acknowledge that what they contend for would permit them to recover more than the actual damage award. They also recognize that normally such result is not permitted. Quoting from their brief, the plaintiffs "agree that no party may recover more than their damages in a tort action or in a contract action where damages are collected solely upon a jury assessment." They attempt to justify a recovery exceeding the judgment amount as follows.

First, they argue that the pro rata share of the liability of each insurer is determined by measuring the amount of its re-

spective coverage against the entire coverage available. The shares in this case would be American Family, one-sixth ($25,000); Cameron Mutual, one-sixth ($25,000); and Columbia, two-thirds ($100,000). The plaintiffs then assert that American Family and Cameron Mutual, by settling, extinguished their pro rata shares of the total liability leaving Columbia liable for two-thirds of the $75,000 damage award, or $50,000.

The plaintiffs contend that such result is necessary to maintain the pure proration concepts established by Missouri case law and suggest that crediting the judgment for $45,000 contravenes Missouri's public policy which "requires that coverage under each of the policies stand undiminished by contractual limitation, regardless of whether the policies are issued by the same or different insurers." *Madden*, 533 S.W.2d at 542. To buttress their public policy argument, the plaintiffs point to what they characterize as the Missouri legislature's "strong position against reduction of sums due under uninsured motorist coverage by amounts of other coverage" such as workers' compensation benefits or medical payments coverage. *See Kuda v. American Family Mutual Ins. Co.*, 790 S.W.2d 464 (Mo.banc 1990); *Madden*, 533 S.W.2d at 542; *Webb v. State Farm Mutual Auto. Ins. Co.*, 479 S.W.2d 148 (Mo.App.1972).

Second, the plaintiffs point to the principle that when uninsured motorist claims arise, as in other litigation, "[s]ettlements are favored in the law and [appellate courts] opt for a solution which encourages the insurers to work together in trying to achieve settlement." *State Farm*, 671 S.W.2d at 279. They suggest that to approve the trial court's reducing the verdict by giving full credit for the settlement sums, thereby allowing the non-settling insurer to avoid its pro rata responsibility, would discourage insurers from working together to achieve a common settlement.

The foregoing arguments by the plaintiffs do not aid them under the peculiar facts of this case. The principle that all available policies are equal and concurrent and that all insurers must contribute pro rata to the loss to the extent of their combined coverage has evolved in Missouri, in part, because of the potential problems faced by accident victims in negotiating with several carriers. In *State Farm*, 671 S.W.2d at 279, Judge Blackmar said, "We agree with the observations of the Supreme Court of Florida in *Sellers v. United States Fidelity and Guaranty Company*, [185 So.2d 689 (Fla.1966)] about the problems faced by accident victims in negotiating with several carriers." The referenced observations in *Sellers* follow:

> [W]e do not mean to imply that an insured protected by multiple policies ... shall be delayed or frustrated in effecting settlement by having to pursue his claim of loss against all of the insurers jointly. He can proceed against any one or more of them, *but in any event he shall not be entitled to recover from all of them more than the amount of his loss from bodily injury caused by an uninsured motorist....*

*Sellers*, 185 So.2d at 692 (emphasis added). In *State Farm*, Judge Blackmar also observed that "[i]f the various insurers [are allowed to] operate in complete isolation, the policy of the law in providing protection to the victims of uninsured motorists will be impeded." *Id.* at 278.

■ Here the plaintiffs, as victims of an uninsured motorist, would have us expand a public policy designed to protect them so as to enhance their claims and permit them to recover more than the amount of their loss. This we decline to do. It is well settled in Missouri that a party cannot be compensated for the same injury twice. *Stiffelman v. Abrams*, 655 S.W.2d 522, 533 (Mo.banc 1983) (wrongful death and Omnibus Nursing Home Act). This is true whether the injury arises out of tort or contract. *Ross v. Holton*, 640 S.W.2d 166, 173 (Mo.App.1982). The remedy provided in a given case shall afford compensation only for whatever injury is actually sustained. *Meletio Sea Food Co. v. Gordons Transports, Inc.*, 191 S.W.2d 983, 985 (Mo.App.1946). Quoting 25 C.J.S. *Damages* § 3, pp. 627–28, the court in *Weeks–Maxwell Const. Co. v. Belger Cartage Serv.*, 409 S.W.2d 792, 796 (Mo.App.1966), said:

As a general rule, a person who has sustained loss or injury may receive no more than just compensation for the loss or injury sustained. He is not entitled to be made more than whole, and he may not recover from all sources an amount in excess of the damages sustained, or be put in a better condition than he would have been had the wrong not been committed.

By dicta in *Steinhaeufel*, the rule against allowing recovery in excess of actual loss was said to apply to UM claims.[13]

Our uninsured motorist statute requires a minimum amount of coverage on each policy of automobile liability insurance issued in this state. It does not place a limit on the total amount of the coverage *so long as that amount does not exceed the amount of actual loss.* (Emphasis added.)

*Id.* at 468. Similar dicta is found in *Madden*, 533 S.W.2d at 545: "[B]oth of such [uninsured motorist] coverages ... are available to Madden, provided, of course, *that insured is limited to recovery of damages suffered."* The weight of authority over the nation follows this rationale. *See* Couch on Insurance 2d (Rev. ed.) § 45:628, pp. 72–73 (1981); 7 Am.Jur.2d, *Automobile Insurance* § 329, p. 1027. None of the reasons which require prorating of the various concurrent and equal coverage require that the plaintiffs here be afforded compensation larger than what the jury determined to be the injury actually sustained. No retreat from the principles of prorated stacking results from this approach.

The award of damages is reversed and the cause remanded for retrial solely on the issue of damages.

MAUS and MONTGOMERY, JJ., concur.

---

**13.** *Steinhaeufel* and *Madden* were decided before current pro rata principles had evolved and before enactment of the current UM statute. However, they evince a recognition that the strong public policy underlying UM coverage does not require variation from the principle that denies double recovery for the same injury.